## Terrizzi Beverage Company *v.* Local Union No. 830, Appellant.

Argued May 24, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Richard H. Markowitz*, with him *Richard Kirschner*,
and *Wilderman, Markowitz & Kirschner*, for appellant.

*Daniel Sherman*, for appellee.

OPINION BY MR. JUSTICE EAGEN, September 25, 1962:
The primary question for decision in this appeal is
the jurisdiction of the Pennsylvania state courts over
the subject matter of the controversy.

The salient facts may be capsuled as follows:

The plaintiff-appellee, the Terrizzi Beverage Com-
pany, is a Pennsylvania corporation engaged in the
beer distributing business in the City of West Chester,
Pennsylvania. On November 1, 1961, by order and un-
der the supervision of the National Labor Relations
Board, an election was conducted among the Terrizzi
employees to determine their future bargaining agent.
The vote overwhelmingly rejected Local 830, Beer Dis-
tributor Drivers, Helpers, and Platform Men, a labor
organization affiliated with the American Federation
of Labor and Teamsters Council, No. 53, which had
previously served as the bargaining agent for this par-
ticular group of employees.

The appellee-corporation, under oral contract had for years regularly purchased large quantities of beer from the brewery of C. Schmidt & Sons, Inc., in the City of Philadelphia. Under the agreement, the beer was to be delivered at the platform of the brewery and the Schmidt employees charged with the responsibility of unloading the empty containers from appellee's trucks and reloading with filled containers.

On or about November 1, 1961, and continuing until the institution of this action, appellee's trucks ran into serious difficulty in the loading process at the brewery. The employees of the brewery, who are members of Local 830, the union rejected by Terrizzi employees, deliberately "slowed down" the loading of appellee's trucks. Various types of tactics were employed to extend the normal period of loading, so that the trucks were daily unduly delayed at the loading platform for hours. During this period also, a tire of one of the trucks was slashed, and steel filings were poured into the motors of two of the trucks. The identity of the perpetrators of the last mentioned crimes was never ascertained.

All of this resulted in a substantial loss of money to the appellee-corporation and seriously affected deliveries to its customers. This action for equitable relief followed. In the complaint, it was charged that the defendant-union, Local 830, and the defendants, Basal and Lanni, president and secretary-treasurer of the union, respectively, acting in concert with other unnamed individuals were coercing, intimidating and harassing the appellee-corporation through the commission of the unlawful acts related above, in an attempt to interfere with the contractual relations existing between Schmidt and the appellee. Preliminary objections to the complaint were filed by the defendants challenging the jurisdiction of the court. These were overruled. After a hearing, the chancellor directed that

a preliminary injunction issue against the defendants until a final hearing upon the filing of security by the appellee in the sum of $1000. The defendants appeal.

Needless to say, no fair-minded person would approve the reprehensible tactics complained of in this case. Such conduct does substantial harm to the cause of labor and the shortsighted thinking that inspires such actions is unworthy of individuals charged with the great responsibility of directing the destinies of a labor organization. Regardless, the only question here involved is one of law, namely, that of jurisdiction. Consideration may not be given to the merits of the controversy if the Pennsylvania courts lack the necessary jurisdiction. The conclusion is inescapable, under decisions of the United States Supreme Court, that this matter must be litigated in the first instance before the National Labor Relations Board and our courts may not at this point interfere.

The so-called Taft-Hartley Act of 1947, C. 120, 61 Stat. 136, 29 U.S.C.A. 151 et seq., as amended, vests *exclusive jurisdiction* in labor disputes involving unfair labor practices in the National Labor Relations Board. If the acts complained of are "arguably" within or may reasonably be deemed to come within the scope and protection of the act, state courts must decline jurisdiction in deference to the tribunal, which Congress has selected for the determination of such issues in the first instance. This is so even though the activities complained of also clearly violate state law. See, *Garner v. Teamsters, C. & H. Local Union 776*, 373 Pa. 19, 94 A. 2d 893 (1953), aff'd 346 U. S. 485, 74 S. Ct. 161 (1953); *Weber v. Anheuser-Busch*, 348 U. S. 468 (1955); *San Diego Building Trades Council v. Garmon*, 353 U. S. 26, 77 S. Ct. 607 (1957); *San Diego Building Trades Council v. Garmon*, 359 U. S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959); *Hotel Employees Union, Local 255 v. Sax Enterprises*, 358 U. S. 270, 79 S. Ct. 273

(1959); *Wax v. International Mailers Union,* 400 Pa. 173, 161 A. 2d 603 (1960); *Navios Corp. v. National Maritime Union,* 402 Pa. 325, 166 A. 2d 625 (1960).

As recently as of June 11, 1962, the United States Supreme Court in *Marine Engineers Beneficial Association v. Interlake Steamship Company,* (30 L.W. 4437) 370 U. S. 173 (1962), stated: "In San Diego Building Trades Council v. Garmon, 359 U. S. 236, this Court held that the proper administration of the federal labor law requires state courts to relinquish jurisdiction not only over those controversies actually found to be within the jurisdiction of the National Labor Relations Board, but also over litigation arising from activities which might arguably be subject to that agency's cognizance. Only such a rule, the Court held, will preserve for the Labor Board its congressionally delegated function of deciding what is and what is not within its domain."

Factually, the case of *Marine Engineers Beneficial Association v. Interlake Steamship Company,* supra, is very similar to the one at hand. Therein the steamship company, respondent, owned a fleet of ships operating on the Great Lakes and elsewhere. Its engineers were not members of, or represented by, the union involved, the Marine Engineers Beneficial Association. One of the respondent's ships was picketed by members of the union while waiting to be unloaded at a dock of the Carnegie Fuel and Dock Company in Duluth, Minnesota. As a result, employees of Carnegie refused to unload the ship. The company filed an action in equity in the Minnesota state courts alleging that the union had tortiously caused Carnegie to breach its contract with the steamship company. The Minnesota courts entertained the action and granted an injunction. The United States Supreme Court, granted certiorari and reversed, holding that since the situation complained of was *possibly* with the jurisdiction of the

National Labor Relations Board that the state courts must defer to that board's determination.

It is our considered conclusion that the activities complained of in this case are "arguably" within the purview of Section 8(b)(4)(i)(ii)(B) of the Federal statute referred to and that the Pennsylvania courts must, therefore, yield jurisdiction.

We consider it significant, but not conclusive, that the National Labor Relations Board has issued an advisory opinion involving this controversy, wherein it asserts it will assume jurisdiction. See, 137 N.L.R.B. 59. Until that tribunal determines otherwise, the courts of Pennsylvania may not assume jurisdiction. As pointed out in the board's opinion, Schmidt's brewery shipments interstate are in excess of $50,000 annually and this gives the board the right to assert jurisdiction over Schmidt's operations which involve the appellee's business.

Appellee's argument that "slow down" by members of a union is not such an activity as is protected or prohibited by the National Labor Relations Board is given weight by the case of *International Union v. Wisconsin Employment Rel. Bd.*, 336 U. S. 245, 69 S. Ct. 516 (1949). However, more recent cases make it clear that this approach is no longer followed by the United States Supreme Court. See, *San Diego Building Trades Council v. Garmon*, supra; *Marine Engineers Beneficial Association v. Interlake Steamship Company*, supra.

There is no doubt that the Pennsylvania courts still retain jurisdiction to enjoin and prevent acts of violence and breaches of the peace, even in a labor dispute. However, the evidence in the record is insufficient to sustain a finding that the defendants were responsible for the tire slashing and truck motor damage complained of. A judgment may not be entered or based upon suspicion and conjecture. Even if the evidence were adequate, jurisdiction to issue an injunction

would necessarily be limited to these violations of the law.

### Motion to Quash

This motion was filed by the appellee on the ground that the appeal was taken prematurely. It appears that the appeal was filed subsequent to the entry of the court order directing that the injunction issue, but six days before the filing of the necessary security and the actual issuance of the injunction.

In this respect, the appeal was from an interlocutory order from which an appeal does not lie. The injunction could not issue until the entry of the security as directed and it is from the issuance of the injunction that the appeal should be taken: *Surco Products, Inc. v. Kieszek,* 367 Pa. 516, 80 A. 2d 842 (1951); *Zeigenfuse v. Boltz,* 401 Pa. 365, 164 A. 2d 663 (1960).

However, the appeal in this case is also from the order below dismissing preliminary objections to the complaint. If such objections challenge the jurisdiction of the court, an appeal does lie from an order of dismissal under the Act of March 5, 1925, P. L. 23, 12 P.S. §672. See, *Wax v. International Mailers Union,* supra. Therefore, the motion to quash cannot prevail.

Order reversed and record remanded with directions to enter an order sustaining the preliminary objections to the complaint. Each side to pay own costs.

Mr. Chief Justice BELL dissents.