[L. A. No. 27425. In Bank. Jan. 27, 1966.]

G. E. RUSSELL, Plaintiff and Respondent, v. ELECTRICAL WORKERS LOCAL 569, INTERNATIONAL BROTHERHOOD OF AFL/CIO, Defendant and Appellant.

Wencke, Carlson & Kuykendall, Jerry J. Williams, Julius, Reich and Brundage, Hackler & Williams for Defendant and Appellant.

Charles P. Scully as Amicus Curiae on behalf of Defendant and Appellant.

Gray, Cary, Ames & Frye, Josiah L. Neeper and Stephen L. Newnham for Plaintiff and Respondent.

TOBRINER, J.—The present case requires us to determine whether, in exercising the residual jurisdiction conferred upon state courts by section 14(c) of the Labor Management Relations Act (hereinafter the Act), those courts must withhold their process until the National Labor Relations Board (hereinafter the board) affirmatively indicates its unwillingness to take a given case. We hold that the jurisdiction exercised by the state courts pursuant to section 14(c) does not depend upon a showing that the board has, in fact, declined to act. Rather, we believe that the party seeking relief need only demonstrate, on the basis of published regulations and decisions of the board, that the case is one which the board would decline to hear. In the present instance, plaintiff has failed to make such a demonstration. Accordingly, the trial court lacked jurisdiction to proceed in the cause and must be directed to dismiss the proceedings.

Plaintiff contracted to perform certain electrical work on an apartment building then under construction and in March 1963 began work with a three-man nonunion crew. In the following month, the defendant union instituted picketing at the job site, intending, plaintiff claims, to induce the building owner to cease doing business with plaintiff. Plaintiff urges that defendant's conduct constitutes a secondary boycott in violation of section 8(b)(4)(B) of the Act. Apparently accepting plaintiff's contentions, the superior court granted plaintiff, pending trial, a preliminary injunction enjoining further picketing and work stoppages; defendant appeals from this order.

According to plaintiff, his gross revenue in 1962 reached approximately $19,000. Certain of his supplies had moved in interstate commerce. The parties agree that the present labor dispute affects interstate commerce. Plaintiff urges, however, that the volume of his business falls below the monetary standard which the board has set for the exercise of its jurisdiction in the nonretail field.

This case requires us to construe section 14(c) of the Act,[1] added by Congress in 1959 to resolve questions arising from the decision of the United States Supreme Court in *Guss* v. *Utah Labor Relations Board* (1957) 353 U.S. 1 [77 S.Ct. 598,

---

[1] 29 United States Code section 164(c), added by section 701(a) of the Labor-Management Reporting and Disclosure Act of 1959 (73 Stat. 519, 541).

609, 1 L.Ed.2d 601]. In *Guss* and its companion cases,[2] the court held that the Act vests the board with exclusive authority to grant injunctive relief in labor disputes affecting interstate commerce. The court denied the power of the states to give such relief, even in cases in which the board had, for budgetary reasons, declined to exercise its jurisdiction. The ruling thus created an extensive "no man's land" in which litigants could secure relief neither from the states, which lacked authority to act, nor from the board, which lacked the resources to exercise the full measure of its exclusive authority.

In 1959, in connection with the enactment of the Labor-Management Reporting and Disclosure Act, Congress undertook to deal with the problem of the "no man's land" by adding section 14(c) to the Act. In relevant part it provides: "(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: . . . (2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State . . . from assuming and asserting jurisdiction over labor disputes *over which the Board declines, pursuant to paragraph (1) of this subsection,* to assert jurisdiction." (Italics added.)

Although Congress thus evinced its intent that the states be free to act when the board declines to assert its jurisdiction, two questions have arisen to perplex the courts charged with interpreting the 1959 amendment. First, section 14(c) does not clearly indicate whether a fruitless attempt by the litigants to invoke the jurisdiction of the board is a necessary precondition to state action or whether, instead, the states may themselves apply the jurisdictional standards and rules of decision of the board and so determine that a case is one which the board would decline to take. Second, in enacting section 14(c), Congress failed to specify which law, state or

---

[2]*Amalgamated Meat Cutters etc. Workmen* v. *Fairlawn Meats, Inc.* (1957) 353 U.S. 20 [77 S.Ct. 604, 609, 1 L.Ed.2d 613], and *San Diego Building Trades Council* v. *Garmon* (1957) 353 U.S. 26 [77 S.Ct. 607, 609, 1 L.Ed.2d 618]. In *San Diego Building Trades Council* v. *Garmon* (1959) 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775] (often referred to as *Garmon II*), the court held that the states may impose no regulation upon the conduct which is "arguably subject to sec. 7 or sec. 8 of the Act . . ." (at p. 245).

federal, would govern in the area of the former "no man's land."[3]

In the present case, we reach only the first of these questions. Section 14(c) does not require prior application to the board; plaintiff need only demonstrate that the board would decline to hear the case. Plaintiff may show such declination by the board on the basis of the published rules and the rules of decision to which Congress referred in section 14(c). To require the parties to submit every case to the board for determination of the jurisdictional question would frustrate the clearly manifested intent of Congress that the board be empowered to delimit the boundaries of its jurisdiction by "rule of decision or by published rules." We would strip these rules of their legal significance were we to require reference of every case to the board.

Furthermore, the requirement of an unavailing appeal to the board might occasion disastrous delay in the process of securing an injunction against unlawful conduct of the union or employer. Such delay would be entirely gratuitous in the many cases in which the facts clearly disclose that the board would decline to exercise its jurisdiction. In the field of labor relations, recurrent dynamic crises particularly require speedy adjudication.

Neither the fact that state courts might experience diffi-- culty in applying the board standards in certain cases nor the danger that those courts might reach diverse interpretations of those standards compels a ruling requiring a fruitless expedition to the board. The proper correctives to the

---

[3]These two questions have been the subject of extensive inquiry and comment and have evoked widely differing views of the history and intent of the 1959 amendment and of the considerations which should govern the resolution of these questions. For contrasting interpretations of the legislative history of section 14(c) see Aaron, *The Labor-Management Reporting and Disclosure Act of 1959* (1960) 73 Harv.L.Rev. 1086, and Hanley, *Federal-State Jurisdiction in Labor's No Man's Land* (1960) 48 Geo.L.J. 709.

· The issue as to which law the states should apply in exercising the jurisdiction conferred by section 14(c) raises anew the question of the proper balance to be struck between state and federal interests in this field. The desirability of uniformity in the law governing the interstate operations of all employers makes a compelling case for the application of federal law. (See Kagel and Smith, *Chief Justice Warren and Labor Law* (1961) 49 Cal.L.Rev. 126.) On the other hand, the states retain a legitimate interest in regulating local conduct, and would probably experience some difficulty in administering a body of law which, in many of its provisions, presupposes the presence of an administrative agency, such as the NLRB. No matter which law they undertake to apply, state courts will in all likelihood encounter serious problems. For a provocative analysis of their dilemma, see Cohen, *Congress Clears the Labor No Man's Land* (1961) 56 Nw.U.L.Rev. 333.

stated problems lie in more clearly articulated board standards and in the availability of Supreme Court review of the state determinations.

Since the enactment of section 14(c), the board has undertaken, on its own initiative, to render advisory opinions on the issue of whether a given case meets its jurisdictional standards.[4] Prudent counsel, contemplating the fact that the plaintiff bears the burden of persuading the state court that the board would decline to proceed, might be well advised to secure such opinions in cases raising close issues as to the exercise of board jurisdiction. We would, however, be unfaithful to the congressional plan embodied in section 14(c) and unresponsive to the need for dispatch in the determination of suits for labor injunctions if we were to hold that board action, either in the form of a decision or an advisory opinion, must be obtained in every case.

A number of state courts have held that they should themselves apply the jurisdictional standards of the board in cases arising under section 14(c). (*Continental Slip Form Builders, Inc.* v. *Brotherhood of Constr. etc. Labor, Local 1290* (1964) 193 Kan. 459 [393 P.2d 1004]; *District Union Local 227, Amalgamated Meat Cutters & Butcher Workmen* v. *Fleischaker* (Ky. App. 1964) 384 S.W.2d 68; *Smith* v. *Noel* (1963) 24 Ohio Op.2d 159 [188 N.E.2d 195].)

Recent decisions of the Supreme Court also lend support to this view. In *Radio etc. Broadcast Technicians Local Union 1264* v. *Broadcast Service of Mobile, Inc.* (1965) 380 U.S. 255 [85 S.Ct. 876, 13 L.Ed.2d 789], the court vacated a state court injunction on the ground that there had been no "proper determination of whether the case is actually one of those which the Board will decline to hear." The court did not, however, indicate that only the board could render such a "proper determination." Nor did it suggest that the litigants should have approached the board for resolution of the jurisdictional question. Instead, it reviewed the record of the case, juxtaposing the stated facts with the published standards of the board and concluding, "this is not a case which the Board has announced it would decline to hear." Similarly in *Hattiesburg Unions* v. *Broome* (1964) 377 U.S. 126 [84 S.Ct. 1156, 12 L.Ed.2d 172], the court reversed a state

---

[4] 29 Code of Federal Regulations sections 101.39-101.43; 102.98-102.110. Since the board began to issue these opinions subsequent to the enactment of section 14(c) and since no statute provides for the board's practice, the availability of these advisory opinions casts no light upon the intent of Congress in enacting section 14(c).

adjudication after determining, on the basis of certain board decisions, that the board would accept the case. We can conceive of no good reason why the courts of the states should not be able to follow the example of the Supreme Court and themselves apply the board standards to determine whether or not the board would exercise its jurisdiction.

No state to our knowledge has consistently imposed a requirement of fruitless appeal to the board in cases arising under section 14(c). In *Bowlavar, Inc.* v. *Local 90, General Team & Truck Drivers etc. Union* (1961) 252 Iowa 851 [109 N.W.2d 22], the trial court had dismissed the action, apparently convinced of a legal mandate that recourse be taken to the board. By the time the case reached the Iowa Supreme Court, the issue had become moot since in the interim the board had declined the case. Two Louisiana cases require declination by the board as a precondition to state action under section 14(c). (*Derouen* v. *Lard* (La.App. 1960) 121 So.2d 311, 315; *Barksdale & LeBlanc* v. *Local No. 130, International Brotherhood of Electrical Workers* (La.App. 1962) 143 So.2d 770.) Yet in another case, the same court was prepared to apply the jurisdictional standards of the board, concluding that the state courts could not act since the board would take the case. (*Toomer* v. *Local No. 995, International Brotherhood of Electrical Workers* (La.App. 1961) 131 So.2d 248.) Although defendant cites to us *Colorado State Council · of Carpenters* v. *District Court* (1964) 155 Colo. 54 [392 P.2d 601], that case casts little light on this question since the plaintiff there presumably did not demonstrate that the board would decline jurisdiction, and the facts of the case strongly suggest that the board would have accepted it.

Scholarly comment divides on the issue presently before us. One commentator concludes that "It would be inconsistent with the general tone of congressional discussion to require a party to apply to the NLRB and have it decline jurisdiction before seeking relief in a local tribunal." (Cox, *The Landrum-Griffin Amendments to the National Labor Relations Act* (1959) 44 Minn.L.Rev. 257, 262.) Another considers the availability of advisory opinions to be persuasive evidence of the necessity of recourse to the board. (Goldberg and Meiklejohn, *Title VII: Taft-Hartley Amendments with Emphasis on the Legislative History* (1960) 54 Nw.U.L.Rev. 747, 753.)

A third commentator concludes that in close cases the board may alone apply its standards, basing his position

upon decisions of the United States Supreme Court which vindicate the primary jurisdiction of the board to determine the meaning of the substantive and operative terms of the Act and, through them, its coverage. (McCoid, *Notes on a "G-String"* (1959) 44 Minn.L.Rev. 205, 239-240.) We believe that these decisions do not relate to the present case, which involves, not the construction of the language of the statute, but the application of standards promulgated by the board. We recognize that the Supreme Court has reversed adjudications based on state court determinations that a given case did not involve a "labor dispute" or a "labor organization" or that the case failed to present some other element necessary to coverage by the Act. (See, e.g., *Marine Engineers etc. Assn.* v. *Interlake Steamship Co.* (1962) 370 U.S. 173 [82 S.Ct. 1237, 8 L.Ed.2d 418]; *Weber* v. *Anheuser-Busch, Inc.* (1955) 348 U.S. 468 [75 S.Ct. 480, 89 L.Ed. 546].) In the present situation, however, we ourselves make no such determination as to the operative provisions or the coverage of the Act. We do not undertake to interpret statutory language whose construction Congress has committed to the board. We do not propose to substitute for that of the board our own view of the coverage of the Act. Rather, we seek only to *apply* standards which the board has laid down for its guidance, and, we believe, for ours.

Turning to our final question whether plaintiff has successfully carried his burden of proving that the board would decline to exercise jurisdiction in the present case, we explain why we have concluded that he has not.[5]

Plaintiff complains that the defendant union picketed the construction site with the intention of causing the building owner to cease doing business with plaintiff. In its answer defendant acknowledges that one purpose of the picketing was "to require the owner of the premises . . . to use contractors who have signed a contract with Local 569." Plaintiff urges that such conduct constitutes proscribed secondary activity in violation of section 8(b)(4)(B) of the Act.

The parties agree that plaintiff's purchases from out of state were sufficient to affect interstate commerce. As we have stated, plaintiff nevertheless urges that the board would not accept the case because of the fact that his gross annual revenue of $19,000 is well below the monetary standard set

---

[5]Contrary to plaintiff's contention, it is of no significance that this issue was not contested at the time of trial since it goes to jurisdiction.

by the board for the exercise of its jurisdiction in the non-retail field.

Plaintiff fails to recognize that the board, in applying its monetary standards to cases involving alleged secondary activity, pursues a consistent policy of adding the business volume of the secondary party at the affected location to that of the primary employer. (*Teamsters Union* v. *McAllister Transfer Co.* (1954) 110 N.L.R.B. 1769; *Madison Bldg. & Const. Trades Council* v. *Hildebrandt* (1961) 134 N.L.R.B. 517, 518; *Hattiesburg Unions* v. *Broome* (1964) 377 U.S. 126 [84 S.Ct. 1156, 12 L.Ed.2d 172].)[6] Although each of these cases involved secondary parties who were themselves employers, plaintiff suggests no reason why the board would follow a different policy in a case, such as the present one, in which the secondary party is the building owner.[7] Such combination of the business volume of the building owner at the affected location with that of the primary party might well meet the board's jurisdictional standard.

Since plaintiff has failed to establish the business volume of the building owner, we cannot possibly determine whether or not the board would decline to take this case. In brief, plaintiff, though seeking to invoke the jurisdiction conferred upon our courts by section 14(c) of the Act, has failed to sustain his burden of demonstrating that the board would not hear this cause. We cannot grant to plaintiff the formidable instrument of injunction in the void of his showing that the board would not accept the case.

We reverse the order appealed from and direct the trial court to dismiss the action.

Traynor, C. J., McComb, J., Peters, J., Peek, J., Mosk, J., and Burke, J., concurred.

---

[6] For an indication that this practice may be compelled by the Act, see *Joliet Contractors Assn.* v. *National Labor Relations Board* (7th Cir. 1952) 193 F.2d 833.

[7] The board treats building owners as secondary parties for the purpose of determining whether proscribed secondary activity has occurred. (*Sheet Metal Workers International* v. *Kisner* (1961) 131 N.L.R.B. 1196; *Building & Construction Trades Council* v. *Ramsey-Waite Co., Inc.* (1965) 151 N.L.R.B. No. 63, 58 L.R.R.M. 1451.)