Stryjewski, Appellant, v. Local Union No. 830.

Argued May 24, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Daniel Sherman,* with him *Sherman & Atkinson,* for appellants.

*Richard Kirschner,* with him *Richard H. Markowitz,* and *Wilderman, Markowitz & Kirschner,* for appellees.

OPINION BY MR. JUSTICE JONES, September 26, 1967:

This appeal stems from the refusal by the Court of Common Pleas No. 9 of Philadelphia County to issue a preliminary injunction at the instance of a retail beer distributor concern against a labor union and certain of its officers and members.

Edmund Stryjewski and Jean Stryjewski, his wife, trading as Tacony Beer Distributing Company [Stryjewskis], operate a licensed beer distributing concern on Torresdale Avenue, Philadelphia. Local Union No. 803 [Union], a Teamsters Union affiliate, is the collective bargaining agent for brewery and beer distribu-

514

tor drivers, helpers and platform men in the Philadelphia area. This Union has a collective bargaining agreement with certain importing distributors[1] who supply beer to so-called "D Distributors", such as Stryjewskis and other retail beer distributors. This collective bargaining agreement provides, inter alia, that all beer supplied by the importing distributors must be *delivered* to their retail beer distributor customers and that no beer may be *picked up* at the platforms of the importing distributors by the importing distributors' customers, including Stryjewskis.[2] It is obvious that, because of this provision in the collective bargaining agreement, the picketing of the premises of a "D Distributor", such as Stryjewskis, precludes the receipt of any beer supplies from the importing distributors because the latters' union employees will not cross the picket line to make beer deliveries.

"To advertise the fact that [Stryjewskis] is nonunion and to attempt to organize the employees employed by [Stryjewskis]",[3] Stryjewskis' premises were picketed by the Union from January 10th to 20th, 1967 and from February 10th until the time of hearing in the court below.[4] Stryjewskis claim that one of their sons is their *sole* employee.

On January 12, 1967, Stryjewskis instituted this equity action in the Court of Common Pleas No. 9 of Philadelphia County against the Union and certain of

---

[1] An "importing distributor" imports beer from outside the state and sells to "D Distributors" who sell, either at wholesale or retail, but not to other distributors.

[2] Stryjewskis contend that this provision of the agreement was the result of the decisions in *Schaufflcr v. Brewery and Beer Distributor Drivers, Helpers and Platform Men, Local 830*, 162 F. Supp. 1 (E.D. Pa.) (1958) and *NLRB v. Brewery & Beer Distributor Drivers, Local 830*, 281 F. 2d 319 (C.A. 3) (1960).

[3] Testimony of the president and business agent of the Union.

[4] There is neither allegation nor proof that such picketing occasioned any acts of violence or breaches of the peace.

its officers and members seeking both monetary damages and injunctive relief to terminate the picketing. After hearing, the court below refused to issue a preliminary injunction and from that decree the instant appeal was taken.

An examination of the opinion of the court below clearly indicates that its refusal to grant injunctive relief was predicated upon the view that the matters at issue were *arguably* within the exclusive jurisdiction of the National Labor Relations Board [NLRB], and not the state court.

Initially, we recognize two well-settled principles of law as presently applicable: (1) on an appeal from a decree refusing to grant a preliminary injunction, our appellate review is limited to a determination whether there were any apparently reasonable grounds for the action of the court below and, unless it is clear that no such grounds existed or that the rules of law relied upon are "palpably wrong or clearly inapplicable", the merits of the case or the reasons for or against the court's action are not considered: *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 344, 123 A. 2d 626 (1956) ; *Riverside Borough School District v. International Brotherhood of Electric Workers, Local No. 607*, 389 Pa. 637, 638, 133 A. 2d 554 (1957) ; *Northampton Area Joint School Authority v. Building and Construction Trades Council*, 396 Pa. 565, 571, 152 A. 2d 688 (1959) ; (2) when the matters in dispute are *arguably* subject to Sections 7 or 8 of the National Labor Relations Act [NLRA],[5] then the state, as well as the federal, courts must defer to the *exclusive* jurisdiction of the NLRB if the danger of state interference with national labor policy is to be averted: *San Diego Building Trades Council, etc. v. Garmon*, 359 U.S. 236, 245, 79

---

[5] National Labor Relations Act, as amended by Labor Management Relations Act of 1947, §101, 29 U.S.C. §§157, 158.

S. Ct. 773 (1959); *Wax v. International Mailers Union*, 400 Pa. 173, 186, 187, 161 A. 2d 603 (1960); *Terrizzi Beverage Co. v. Local Union No. 830*, 408 Pa. 380, 383, 184 A. 2d 243 (1962).

The sole question resolved by the court below was that of jurisdiction, a question generally troublesome in labor litigation. It is clear beyond any doubt that it has been the intent of the Congress through its legislative enactments and of the United States Supreme Court through its pronouncements to fashion a labor policy which is *national* in scope. However, for some years an intolerable situation existed in labor-management disputes where the NLRB, for budgetary or other considerations, declined or refused to act and where the state courts or agencies, by reason of the ruling in *Guss v. Utah Labor Relations Board*, 353 U.S. 1, 77 S. Ct. 598 (1957), were precluded from exercising any jurisdiction. Both management and labor frequently found themselves in a "no man's land" where rights existed without a remedy for their enforcement. To correct this situation, through the enactment of the LMRA,[6] supra, the Congress provided that state courts could assume jurisdiction in labor disputes where the NLRB, by rule of decision or published rules, had declined or refused to assert jurisdiction. See: *Pa. Labor Relations Board v. Butz*, 411 Pa. 360, 365-370, 192 A. 2d 707 (1963).

In the court below, Stryjewskis argued that jurisdiction was in the state court because the NLRB could not and would not take jurisdiction for two reasons: first, because their only employee was their son[7] and

---

[6] Labor Management Relations Act of 1947, Title I, §101, 29 U.S.C., §164(c), (1), (2).

[7] "The term 'employee' . . . shall not include . . . any individual employed by his parent . . ." LMRA, 1947, §101, 29 U.S.C. §152(3). See: *North Whittier Heights Citrus Ass'n v. NLRB*, 109 F. 2d 76 (1940), cert. den. 310 U.S. 632, reh. den. 311 U.S. 724.

second, because Stryjewskis' gross yearly sales were only $230,000.[8] However, at the time of the hearing in the court below, the NLRB had not declined or refused to take jurisdiction[9] and the matters at issue were subject to construction as *arguably* within the jurisdiction of the NLRB under the *Garmon* ruling, supra.

In the court below, Stryjewskis had the burden of showing that the NLRB would not assume jurisdiction. Assuming, *arguendo*, that Stryjewskis had carried their burden of proof that, in all probability, the NLRB would *not* take jurisdiction because Stryjewskis had only one employee, i.e., their son, and because their gross annual retail sales were far below the jurisdictional standard of cases entertained under the rule enunciated by the NLRB, the question still remains whether until such time as the NLRB, *in fact*, has declined or refused to accept jurisdiction the state court could assume jurisdiction.

---

In this connection, we disagree with the court below in its footnote finding that Stryjewskis had other employees because an examination of the record fails to substantiate such finding and the evidence in this respect falls far short of the qualitative evidence to support a finding of fact to that effect.

[8] Under the authority granted by the provisions of the LMRA, §164, (c), (1), 29 U.S.C., §164(c)(1), the NLRB announced (NLRB Release No. R-576, issued October 2, 1958), that it would assert jurisdiction over all retail enterprises which fell within its statutory jurisdiction and which had a gross volume of business of at least $500,000 annually. For the considerations which led to the revision of the NLRB standards, see: *Siemons Mailing Service.* 122 NLRB 81 (1958). See also: *Carolina Supplies and Cement Co.,* 122 NLRB 88 (1958). The court below considered such factor of no moment because it was of the opinion that it was not the amount of business done by Stryjewskis which was of importance but the amount of business done by the importing distributors. The soundness of that opinion need not now be considered.

[9] Since the hearing in the court below, the NLRB has declined to take jurisdiction. However, such post-trial declination plays no part in determining the propriety of the refusal to issue an injunction on the facts existing *at the time of hearing.*

Whether a state court can assume jurisdiction in the absence of an actual declination or refusal to act on the part of the NLRB has not been specifically determined by the Supreme Court of the United States. Cf. *Hattiesburg Building & Trades Council v. Broome*, 377 U.S. 126, 84 S. Ct. 1156 (1964); *Radio & Television Broadcast Technicians, Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S. Ct. 876 (1965). On this subject courts in other jurisdictions have adopted contrary views. In *Colorado State Council of Carpenters v. District Court of Larrimer County*, 155 Colo. 54, 392 P. 2d 601 (1964) the Supreme Court of Colorado held that before a state court can take jurisdiction it must be shown that the NLRB has declined to do so. In *Russell v. Electrical Workers Local 569*, 43 Cal. Rptr. 725 (1965) the District Court of Appeals in California held that an assumption of jurisdiction by state courts must await an actual declination to act by the NLRB but the Supreme Court of California in *Russell v. Electrical Workers Local 569*, 48 Cal. Rptr. 702 (1966) reversed this ruling stating, inter alia: "We hold that the jurisdiction exercised by the state courts pursuant to section 14(c) does not depend upon a showing that the [NLRB] has, in fact, declined to act. Rather, we believe that the party seeking relief need only demonstrate, on the basis of published regulations and decisions of the board, that the case is one which the board will decline to hear."[10]

We believe that, until the United States Supreme Court has spoken directly on this subject we should adhere to the view that, pending an actual declination

[10] Commentators also have taken opposite views: Cox, The Landrum-Griffin Amendments to the NLR Act (1959), 44 Minn. Law Rev. 257, 262; Goldberg and Meiklejohn, Title VII; Taft-Hartley Amendments, with Emphasis on the Legislative History: (1960), 54 Nw. U.L. Rev. 659, 747.

to act by the NLRB, a state court should not assume jurisdiction. While both the LMRA and NLRB, the latter through the medium of its rules, have established certain standards it is evident that cases necessarily will present many variables and a resolution of such variable by the state courts, in the absence of a declination to act by the NLRB, may well result in a chaotic situation which will harm the national labor policy.

On the basis of the instant record and in the absence, *at the time of hearing,* of an actual declination or refusal to act by the NLRB, the court below did have reasonable grounds for its refusal of injunctive relief under the circumstances. When the matter comes on for final hearing, the fact that the NLRB has declined to act will furnish a basis upon which the court below can now assume jurisdiction and proceed to the determination of the cause on its merits.

Decree affirmed. Appellants to pay costs.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The Court has affirmed the refusal of the lower Court to grant a preliminary injunction because the case was "arguably" within the jurisdiction of the NLRB under *San Diego Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S. Ct. 773 (1959). I join in Justice ROBERTS' dissenting Opinion, but I am impelled to make several additional observations.

The National Labor Relations Act, 29 U.S.C., §151 et seq., established a National policy, and where that was seriously affected gave NLRB exclusive jurisdiction. This was modified by the Labor Management Relations Act of 1947, §101, 29 U.S.C., §§152(3) and 164. That Act (LMRA) provided that *"the term 'em-*

*ployee' . ... shall not include any individual . . . employed by his parent . . . :"* Section 152(3), supra.*

. Thereafter, and under the provisions of the LMRDA, Section 164(c)(1) .and (2),** the NLRB announced in an NLRB Release No. R-576 (issued October 2, 1958). that it would take jurisdiction (1) over all retail enterprises which fell within its statutory jurisdiction and (2) which .had. a gross volume of business of at least $500,000 annually.

In. this case, plaintiff and his wife, trading as Tacony Beer Distributing Company, operated a licensed. beer distributing concern on Torresdale Avenue, Philadelphia. Their beer is purchased and consumed within Pennsylvania .and did not and obviously could not interfere with or affect interstate commerce. Appellants have a gross annual business of $230,000. They did not have a single employee, since the term "employee" as defined by the Act does not include an individual employed by his parent—supra. It is clear, therefore, that since 1958 the NLRB would not take jurisdiction of this case. Nevertheless, the local union picketed them and is gradually or rapidly putting them out of business; and a majority of this Court have refused to enjoin this picketing.

By the time the NLRB *specifically* decides that it will not take jurisdiction of this case—and there is not

* Italics throughout, ours.

** Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §164(c)(1) and (2). The Act provides in part: "(c)(1) The Board, in its discretion, may, by rule of decision or by published rules . . . decline to assert jurisdiction over any labor dispute . . . where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. . . . (2) Nothing in this subchapter shall be deemed to prevent . . . the courts of any State . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction." (Emphasis supplied.)

the slightest, remotest doubt of its refusal*—the poor little Stryjewski family will be broke, or out of business.

One of the many things which it is impossible to comprehend in these troubled days is why so many hypocritical politicians don't protect, and the unions are equally unwilling to protect, the little fellow (including the small family store) from big business and big unions. The little fellow, including the traditional family store, has been the epitome and the backbone of our Country. Why don't they let the little businessman eke out a little existence against what everyone knows are great odds?

The Majority rely upon *San Diego Unions v. Garmon*, 359 U.S., supra. In that case, the Court said (page 245): "When an activity is *arguably* subject to §7 or §8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national *policy* is to be averted." Imagine a business composed of husband and wife and son endangering the *national* policy! That case is clearly inapposite for the two-fold reason (1) this little business is one of the very few activities which are not *arguably*** subject to Section 7 or 8 of the Act, and (2) this little business cannot possibly endanger the national policy.

For these reasons, I would issue the injunction **prayed for.**

---

* It is agreed by all the parties that the NLRB has actually decided that it will not take jurisdiction.

** In these highly controversial and emotional days, the test "arguably" within the jurisdiction of the NLRB is one of the most unrealistic and unjustifiable ever invented. Is there any topic, subject, question or issue upon which there is no argument today? The aforesaid "arguably" test should be quickly changed by Congress or by the Supreme Court.

522

By its decision today the majority has managed to perpetuate the very "no man's land"[1] which Congress sought to abolish by section 14(c) of the L.M.R.D.A.[2] As the Court correctly notes, the situation produced by the decision in *Guss v. Utah Labor Relations Board,* 353 U.S. 1, 77 S. Ct. 598 (1957) was a troublesome one, for it resulted in a state court being forced to shut its doors to a litigant with a valid complaint even though the N.L.R.B. had also declined jurisdiction. To eliminate this "no man's land", where rights existed without remedies, Congress enacted section 14(c) of the L.M.R.D.A. Although the clear intention of this act is to allow the state courts to assume jurisdiction in labor disputes where it is obvious that the N.L.R.B. by "rule of decision or by published rules" will decline to hear the case, nevertheless the majority has construed the language of §14(c) to require that the N.L.R.B. actually refuse jurisdiction in *each particular* case before the state judicial forum becomes available. Such a reading completely ignores the possibility that the board, wholly consistent with §14(c), may decline jurisdiction *prospectively* over an *entire class of cases* by its published rules and jurisdictional standards. In

---

[1] This phrase appeared first in Senate Report No. 187, April 14, 1959, as reported in 1959-2 U.S. Code Cong. & Ad. News 2318, 2341.

[2] Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §164(c)(1) and (2). The act provides in part: "(c)(1) The Board, in its discretion, may, by rule of decision *or by published rules* . . . decline to assert jurisdiction over any labor dispute . . . where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. . . . (2) Nothing in this subchapter shall be deemed to prevent . . . the courts of any State . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction." (Emphasis supplied.)

fact, this very case presents a situation where the majority of this Court has re-created the "no man's land."

It is true, as the majority points out, that the Supreme Court of the United States has not yet passed precisely on the construction of §14(c). Nevertheless, in *Radio & Television Broadcast Technicians, Local 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 85 S. Ct. 876 (1965), the Court indicates quite strongly that §14(c) allows a state court to *anticipate* N.L.R.B. reaction to a particular matter by determining whether that controversy falls without previously announced N.L.R.B. jurisdictional standards. In deciding that the *Radio & Television* dispute was not shown by the employer to be "one of those which the Board will decline to hear", the Court used, as its measuring rod, the *previously* announced figure of $100,000 in gross receipts given by the N.L.R.B. as the required jurisdictional amount in cases involving radio stations. Even the language used to deny relief to the employer speaks of determining if a case is one which the board "*will* decline to hear." 380 U.S. at 256, 85 S. Ct. at 877. (Emphasis supplied.) Such language certainly imparts an anticipatory flavor to §14(c).

The majority opinion recites that both interpretations of §14(c), the anticipatory approach and the "wait and see" method, have found favor in state tribunals. It cites two cases, one from California, the other from Colorado, as illustrative of this split of authority. Then, for no apparent reason other than an unsubstantiated fear of chaos in our national labor policy, the majority proceeds to adopt the "wait and see" method purportedly used in Colorado. Not only is this choice an unhappy one from a policy point of view, it also requires a misreading of the Colorado case. Nowhere in *Colorado State Council of Carpenters v. District Court of Larrimer County,* 155 Colo. 54, 392 P. 2d 601 (1964) is there any language to indicate that a

state court must decline jurisdiction in a particular matter until that precise case has been rejected by the N.L.R.B. All that appears on this issue is a broad statement that "state courts have no jurisdiction to enjoin peaceful picketing in the absence of a showing that the National Labor Relations Board has declined to accept jurisdiction over the controversy." 155 Colo. at 56, 392 P. 2d at 601, 602. Certainly it cannot be said from this language that Colorado has eliminated the possibility of a published rule being used to show a prospective denial of jurisdiction by the board. It appears that the employer did not even attempt to show a prospective denial and, moreover, the statement of facts contained in the opinion reveals nothing upon which such an argument could have been based.

In contrast to the Colorado case, the California case, *Russell v. Electrical Workers Local 569,* 48 Cal. Reptr. 702, 409 P. 2d 926 (1966), represents a clear holding that state courts need not wait for the board to decline jurisdiction in a particular controversy before hearing the case. In reversing a lower court holding that the employer must always first take his case to the N.L.R.B., Mr. Justice TOBRINER, writing for a unanimous court, noted: "To require the parties to submit every case to the board for determination of the jurisdictional question would frustrate the clearly manifested intent of Congress that the board be empowered to delimit the boundaries of its jurisdiction by 'rule of decision or by published rules.' We would strip these rules of their legal significance were we to require reference of every case to the board." 48 Cal. Reptr. at 704, 409 P. 2d at 928. I can only underscore this sound statement of logic and law by pointing out that the very essence of preliminary injunctive relief is its swiftness. To require an employer to make a completely fruitless and futile claim to the N.L.R.B.—

a claim whose fate is already sealed by previous board pronouncements that it will not hear such matters[3]— is tantamount to stripping the preliminary injunction completely of its effectiveness.

It remains now to apply the California rule to the facts before us. In so doing I am convinced that the lower court erred in refusing to reach the merits of the request for preliminary injunction. I appreciate that our power to review the denial of a preliminary injunction is tempered by our own case law which cautions that we leave undisturbed any such decision that is based on "apparently reasonable grounds."[4] I also realize that, in the area of labor law, the state court must leave to the N.L.R.B. any case that is *arguably* within the jurisdiction of the board. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773 (1959). Nevertheless, a careful review of the record in this matter reveals no such reasonable ground to support the lower court's conclusions of fact; and a review of the N.L.R.B.'s announced jurisdictional standards unquestionably shows that this matter is not even arguably within its jurisdiction.

The appellants advanced two arguments to support their conclusion that the board would not hear this case. First, it is contended that the Stryjewskis employ only their son and that the National Labor Relations Act itself declares that one is not an employee if

---

[3] Although not technically relevant to this discussion of whether the lower court was correct in refusing to assert jurisdiction, it should be noted that on the day of oral argument before this Court, the N.L.R.B. did in fact decline to hear this case on the ground that the Stryjewskis have no employees. See letter of May 23, 1967 from the N.L.R.B. to Tacony Beer Distributing Company (Stryjewskis), and note 5, infra.

[4] *Northampton Area Joint School Authority v. Building and Construction Trades Council,* 396 Pa. 565, 571, 152 A. 2d 688, 691 (1959).

he works for his parents.[5] Thus it follows that since the Stryjewskis have no employees, the federal statute does not even apply to them and of course the federal agency will not take jurisdiction. In a footnote the trial court opinion states however, that the Stryjewskis do in fact have other employees. This is simply not substantiated by the record. Nowhere in the 200 pages of testimony is there the slightest scintilla of evidence that anyone works for the Stryjewskis other than their son. That another son and a brother-in-law have occasionally helped out on weekends for à few hours and for no pay certainly cannot support a finding that the Stryjewskis had employees within the meaning of the act.[6]

The second reason advanced for the N.L.R.B.'s lack of jurisdiction is based upon N.L.R.B. Release No.

---

[5] Labor Management Relations Act of 1947, 29 U.S.C., §152(3) : "The term 'employee' . . . shall not include . . . any individual employed by his parent. . . ." To the fact that the Stryjewskis have no employees even the majority agrees. Majority opinion, fn. 7.

It could be argued that a lack of employees so robs the N.L.R.B. of jurisdiction that even section 14(c) is not applicable. The language of 14(c) creates a procedure whereby the board may decline to hear cases over which it *could* take jurisdiction. However, the letter from the board to the Stryjewskis states that "Tacony is not an employer within the meaning of the Act," and that "[t]herefore, any picketing directed at Tacony by the Respondent, Local 830, or any other labor organization would not be encompassed by Section 8(b)(7)(C) of the Act." Such language can certainly be read to mean more than a mere refusal to hear a case pursuant to 14(c). It might very well mean that the board *could not* hear this case even if it wanted to. In such a situation, assuming that a state court can read the definition section of the Act as easily as the board can, there would certainly be no need to wait for the board to say "no" before we can say "yes."

[6] See, e.g., *N.L.R.B. v. A.S. Abell Co.*, 327 F. 2d 1, 4 (4th Cir. 1964). In construing the National Labor Relations Act, the court noted: "Congress intended the word employee to denote a person who works for another for wages or salary under direct supervision. . . ." In no way can Mrs. Stryjewski's brother-in-law be said to come within this definition.

R-576 issued October 2, 1958 in which the board declared that it would assert jurisdiction only over those retail enterprises whose gross volume of business exceeded $500,000 annually. The Stryjewski's gross volume is only $230,000 per year.

In spite of this conceded fact, the lower court concluded that, for jurisdictional purposes, the Stryjewski's gross receipts should be added to those of the importing distributors whose drivers would not cross the picket line. This addition process is indeed consistent with board policy, but only when a *secondary* boycott is involved. See *Hattiesburg Building and Trades Council v. Broome,* 377 U.S. 126, 84 S. Ct. 1156 (1964) and cases cited therein. Appellee's contention notwithstanding, there simply is no secondary boycott present here. Admittedly, on May 15, 1967 a federal preliminary injunction was issued restraining the union from forcing the importing distributors to cease doing business with several domestic distributors, one of whom was the present appellant.[7] However, not only was this injunction dissolved pursuant to the N.L.R.B.'s letter of May 23, 1967 in which the board declared that none of the picketing was unlawful as secondary, but also the trial record below is devoid of any evidence that there was picketing at the importer's place of business in the present dispute. It is the nature of a secondary boycott that pressure is put upon one employer to cease trading with another employer with whom the union has its primary dispute.[8] Clearly under these circumstances it is quite reasonable for the N.L.R.B. to look to both employers' gross receipts for jurisdictional purposes. However, the only picketing complained of by the Stryjewskis occurred at *their* place

---

[7] The full text of this injunction is set out in the appendix of appellees' brief at pages 27-29.

[8] *National Labor Relations Board v. Denver Bldg. & Const. Trades Council,* 341 U.S. 675, 71 S. Ct. 943 (1951).

of business. If the result of the picketing was a refusal by the importer's drivers to cross the picket line, thus preventing the Stryjewskis from transacting business with the importing distributors, this alone cannot support the conclusion that a secondary boycott was involved. Since, absent the presence of a secondary boycott, the trial court's determination of gross receipts was clear error, it should not have declined jurisdiction on that ground.

For all the foregoing reasons, I firmly believe that the lower court should have entertained the preliminary injunction on its merits—even though at that time the N.L.R.B. had not yet specifically declined jurisdiction over this particular controversy. Of course I agree with the majority that even under their reading of section 14(c) the case can now be heard below since the N.L.R.B. in fact declined jurisdiction on the day of oral argument before this Court. Nevertheless the rule of law announced by the majority is, I feel, an improper one.

As to that rule I dissent.

Mr. Chief Justice Bell joins in this dissenting opinion.