Kerr *v.* Butler Building Trades Council, AFL-CIO, Appellant.

248

Argued November 16, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Emil E. Narick,* with him *Joseph Mark Maurizi, Leo M. Stepanian,* and *Suto, Power, Balzarini & Walsh,* for appellants.

*Lee A. Montgomery,* with him *Norman D. Jaffe,* for appellee.

Opinion by Mr. Justice Pomeroy, March 20, 1972:

This is an appeal from a decree granting a preliminary injunction prohibiting the peaceful picketing of plaintiff's store by members of appellant, Butler Building Trades Council, AFL-CIO (Council). The appellant raises both jurisdictional and First Amendment challenges.

The facts are as follows: Plaintiff George Kerr and his wife owned a retail appliance store at 1609 North Main Street in Butler, Pennsylvania, which was operated by a family owned corporation, plaintiff George Kerr, Inc. Plaintiffs contracted with C. R. Holbein, a nonunion building contractor, to construct a portion of a new appliance store at another location near Butler. Between April 15 and April 23, 1971, the Council engaged members of its local unions to picket the new construction site on Mercer Road carrying signs reading "C. R. Holbein is unfair to organized labor." On April 24 the picketing activity shifted to appellee's store at North Main Street under the banner: "George Kerr is unfair to Local 323. Do Not Patronize Him." The picketing continued until the preliminary injunction now appealed from was entered on April 30, 1971.[1]

Although the picketing at the store interfered with deliveries and adversely affected appellee's business, it was friendly and peaceful. The evidence conflicts and no specific determination was made by the lower court

---

[1] The court entered the injunction ex parte on a finding of immediate and irreparable harm to plaintiffs. See Pa. R. C. P. 1531(a). Hearing was held and testimony taken on May 4, and on May 11, 1971 the chancellor filed his findings of fact, conclusions of law and a decree which continued, with modifications, the April 30 preliminary injunction until final hearing, and further order of court. This appeal followed. See Act of February 14, 1866, P. L. 28, §1, 12 P.S. 1101, which has not been repealed by Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. I, §101, 17 P.S. §211.101.

as to whether the pickets remained exclusively on public property. It is uncontested that the purpose of the Council in picketing was to force the appellees either to breach the construction agreement with C. R. Holbein or to persuade Holbein to employ union workers.

From these facts the chancellor concluded that no labor dispute existed between the Council and appellees and that a court of equity had jurisdiction to enjoin this picketing of a store owner which, though peaceful, became unlawful when its purpose was to coerce the owner to breach a building contract. We disagree that the court had jurisdiction, and must therefore reverse. We accordingly do not reach the constitutional argument that the preliminary injunction violated the appellant's First Amendment right of free speech.

As we observed in *Stryjewski v. Local Union No. 830,* 426 Pa. 512, 516, 233 A. 2d 264 (1967), the question of jurisdiction in labor litigation is generally a troublesome subject. We recognized, however, that "[i]t is clear beyond any doubt that it has been the intent of the Congress through its legislative enactments and of the United States Supreme Court through its pronouncements to fashion a labor policy which is *national* in. scope." This recognition was based principally on the decision of the United States Supreme Court in *San Diego Trades Council, etc. v. Garmon,* 359 U.S. 236, 3 L. Ed. 2d 775 (1959), where it was held that the National Labor Relations Act preempts the jurisdiction of state and federal courts to regulate conduct "arguably subject to §7 or §8 of the Act." 359 U.S. at 245. The United States Supreme Court has recently had occasion to reaffirm this underlying principle, although it divided on the application of the rule to the facts of the case at hand. *Amalgamated Assn. of Street, Electric Railway and Motor Coach Employees of America, etc. v. Lockridge,* 403 U.S. 274,

29 L. Ed. 2d 473 (1971). As the majority of the Court, speaking through the late Mr. Justice HARLAN, said: "The constitutional principles of pre-emption, in whatever particular field of law they operate, are designed with a common end in view: to avoid conflicting regulation of conduct by various official bodies which might have some authority over the subject matter." Specifically referring to "the principle of pre-emption that informs our general national labor law", the Court said: "The rationale for pre-emption, then, rests in large measure upon our determination that when it set down a federal labor policy Congress plainly meant to do more than simply to alter the then prevailing substantive law. It sought as well to restructure fundamentally the processes for effectuating that policy, deliberately placing the responsibility for applying and developing this comprehensive legal system in the hands of an expert administrative body rather than the federalized judicial system." 403 U.S. 285-86, 288, 29 L. Ed. 2d 482-83.

Turning as we must to the governing federal statute in the field of labor relations, the Labor Management Relations Act of 1947[2] (herein "L.M.R.A."), the basic question is whether the activity here complained of comes within the definition of an unfair labor practice. If it does, §10(a) of the L.M.R.A., 29 U.S.C. §160(a) empowers the National Labor Relations Board to prevent it, and provides that this power of the Board shall be exclusive and "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise."

Section 8(b)(4)(B) of the L.M.R.A. provides in pertinent part: "(b) It shall be an unfair labor practice for a labor organization or its agents . . . (4) . . . (ii) to threaten, coerce, or restrain any person en-

---

[2] 29 U.S.C. §141 et seq.

gaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person . . . to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees. . . ." 29 U.S.C. §158(b)(4)(B).

The conduct described in this section, including the quoted language, is customarily referred to as a "secondary boycott". See *National Labor Relations Board v. Denver Bldg. & Construction Trades Council*, 341 U.S. 675, 688, 95 L. Ed. 1284, 1295 (1951). As in the *Denver Building* case, so here, the object of "what transpired . . . was to force or require [Kerr] to cease doing business with [Holbein]". It was an object of the picketing to force Kerr, the owner, to terminate the construction contract with Holbein, the contractor. Appellant's activity was clearly a secondary boycott. In the frequently cited description of Judge Learned HAND, "The gravamen of a secondary boycott is that its sanctions bear, not upon the employer [here Holbein] who alone is a party to the dispute, but upon some third party [here Kerr] who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands." *Local 501, IBEW v. NLRB*, 181 F. 2d 34, 37, aff'd, 341 U.S. 694 (2d Cir. 1950). The parties in the present case fall squarely within this classic mold. The appellees (Kerr) were third parties having no concern in the representation controversy between the Council (appellant) and Holbein, the contractor.

The U. S. Supreme Court in *Denver Building* held that labor activity of this sort (in that case a strike) with such an object was an unfair labor practice within the meaning of §8(b)(4). As noted above, it is settled

that where there is an arguable violation of §7 or §8 of the federal act, state courts and labor boards, and indeed federal courts also must defer to the exclusive jurisdiction of the N.L.R.B.[3]

The prerequisite of this federal jurisdiction over and federal preemption of a labor dispute is that it have an effect on interstate commerce. See the L.M.R.A., 29 U.S.C. §141 et seq. The National Labor Relations Board may decline jurisdiction, however, in those cases where it is of the opinion that the burden on commerce is not sufficiently substantial to warrant its exercise. 29 U.S.C. §164(c). If there is no such effect on interstate commerce, a state tribunal is free to act. In the case at bar, it is by no means clear that the basis for federal jurisdiction exists. Appellee George Kerr, Inc., a Pennsylvania corporation, is a retail establishment which makes no sales outside of Pennsylvania and employs but thirteen persons at a single location in Butler, Pennsylvania. George Kerr, Inc. buys the goods (appliances) it sells from distributors located in Pennsylvania, but there is no showing of the dollar volume of goods purchased or sold by Kerr. The only interstate factor disclosed by the record is that ninety percent of the appliances are manufactured outside of Pennsylvania.[4]

---

[3] *San Diego Building Trades Council v. Garmon, supra; Stryjewski v. Local Union No. 830, supra; Terrizzi Beverage Co. v. Local Union No. 830,* 408 Pa. 380, 184 A. 2d 243 (1962) ; *Wax v. International Mailers Union,* 400 Pa. 173, 161 A. 2d 603 (1960).

[4] Assuming interstate commerce in some measure is found to be involved in this unfair labor practice, it is unclear whether this necessarily vests jurisdiction in the National Board. The 1959 amendment to the NLRA, 29 U.S.C. §164(c) (1), supposedly put an end to the so-called no-man's land where the N.L.R.B. did not want jurisdiction and the states could not have it, by providing: "The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline

Even if, however, the effect on commerce of the dispute here involved is insufficient to bring about federal preemption, a matter not for us to decide, there is still no jurisdiction in the court below, for in that event the statutory law of this Commonwealth would vest jurisdiction in the State Labor Relations Board. The Pennsylvania Labor Relations Act of 1937, Act of June 1, 1937, P. L. 1168, No. 294, §1 et seq., as amended, 43 P.S. §211.1 et seq. (the "L.R.A."), is patterned after the national act. Like the L.M.R.A. it invests the State Labor Relations Board with exclusive power to prevent any person from engaging in any unfair labor practice, 43 P.S. §211.8(a), and like the national act, it proscribes as an unfair labor practice conduct which amounts to a secondary boycott, 43 P.S. §211.6(2)(d). Appellees rely on the decision in *Bright v. Pgh. Musical Society Am. Fed. of Musicians, Local Sixty,* 379 Pa. 335, 108 A. 2d 810 (1954) as holding that a secondary boycott is not a labor dispute, and that therefore a court of equity may exercise its jurisdiction to enjoin the illegal activity complained of. The holding in *Bright* was that on the particular facts there involved there was no "labor dispute", and hence the State Labor

to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959." The jurisdictional guidelines of the N.L.R.B. (N.L.R.B. Release No. 576 issued October 2, 1958), establishing a $500,000 per year gross volume of sales requirement for retail concerns before the N.L.R.B. will consider the case, is arguably a qualifying declination of jurisdiction where this volume of business is not shown. In *Stryjewski, supra,* however, we considered this question and rejected the argument that the guidelines are "published rules". In accord see *Douds v. Sheet Metal Workers International Assn. Local Union No. 28,* 101 F. Supp. 273 (E.D. N.Y.,

Relations Board was without jurisdiction and, by the same token, a court injunction was not barred by the Labor Anti-Injunction Act of 1937, Act of June 2, P. L. 1198, §1, et seq., as amended, 43 P.S. §206 et seq.[5] In *Bright*, the Musicians Union objected to the "record hops" sponsored by local "disc jockeys". To bolster its position, the union announced that its members would refuse to perform for any entertainer permitting himself to be interviewed by a disc jockey. When the union carried out its announced policy with respect to plaintiff, and in addition placed him on their unfair list and requested the national union to do the same, injunctive relief was sought in the state courts. In sustaining the lower court's jurisdiction, we considered critical the fact that the defendant union "does not represent and has no desire to represent either appellee or disc jockeys. It has no concern with the wages or working conditions of appellee or disc jockeys, whether the employment of the disc jockey is in connection with a radio broadcast or a disc hop. It appears self-evident that an employer must be involved to some extent in any labor dispute, either as one of the parties to a dispute or as one whose employe representation is an issue between competing unions. None of the essential elements of a labor dispute as defined

---

1951). But see *NLRB v. Local 751 United Brotherhood of Carpenters and Joinders of America, AFL-CIO*, 285 F. 2d 633 (9th Cir. 1960). The "guidelines" do not appear in this record.

[5] This Pennsylvania version of the Norris-LaGuardia Act, 29 U.S.C. §101 et seq. is often referred to as the "Little Norris-LaGuardia Act". It parallels the federal statute in narrowly circumscribing the power of the courts to issue injunctions in cases involving or growing out of labor disputes. These two complementary statutes, like the two labor relations statutes mentioned in the text, emphasize the federal and state policy of avoiding court intervention in disputes which are "labor disputes" as defined in the several statutes.

in the Labor Relations Act and the Anti-Injunction Act, are present." *Bright, supra,* at 341-42. In the case at bar, in contrast, it is clear that the defendant union seeks to represent Holbein's employees in collective bargaining, a situation falling squarely within the definition of a labor dispute.

In sum, we conclude that the actions complained of amounted to an unfair labor practice arising out of a labor dispute, and vested exclusive jurisdiction in either the National Labor Relations Board or the State Labor Relations Board. Accordingly, the decree of the lower court granting injunctive relief is vacated and the complaint is dismissed. Costs on appellees.

· The former Mr. Chief Justice BELL took no part in the consideration or decision of this case. The former Mr. Justice BARBIERI took no part in the decision of this case.