[Civ. No. 41935. Second Dist., Div. Five. Nov. 19, 1974.]

L. G. BREITEGGER, Plaintiff and Appellant, v.
COLUMBIA BROADCASTING SYSTEM, INC., et al.,
Defendants and Respondents.

COUNSEL

Harry Gold for Plaintiff and Appellant.

O'Melveny & Myers, Charles G. Bakaly, Jr., Richard N. Fisher, John L. Zenor, Brundage, Neyhart, Miller, Reich & Pappy, Eugene Miller and Dennis M. Harley for Defendants and Respondents.

OPINION

ASHBY, J.—Appellant Breitegger filed a complaint in the Superior Court of Los Angeles County against respondents Columbia Broadcasting System, [Inc.] (CBS), and International Brotherhood of Electrical Workers, Local No. 45 (Local 45),[1] for "Breach of Contract; Misrepresentation Under Labor Code §§ 1050, 1054 and Wrongful Interference in Contract and Advantageous Business Relations."

The trial court entered judgment of dismissal on the ground that the court lacked jurisdiction over the subject matter because exclusive primary jurisdiction is vested in the National Labor Relations Board (NLRB). Plaintiff Breitegger appeals.

The allegations of the complaint are as follows: Appellant was employed by CBS as an electrical worker from October 1960 to November 1967, when he was laid off. Thereafter appellant applied for employment in a similar capacity with various prospective employers and for re-employment with CBS. In making such applications appellant stated that the

---

[1]The caption of the complaint also names the AFL-CIO and Does I through XX as defendants, but according to appellant's brief "[b]y agreement AFL-CIO was removed as a defendant and is not a party to this appeal."

reason for leaving the service of CBS was "season lay off." In the regular course of employment practice such prospective employers inquired of Local 45 as to the character of appellant's services and to verify the stated reason for appellant's prior termination. In responding to such inquiries Local 45 represented that the plaintiff was discharged for misconduct and inefficiency. Said representations were knowingly false and were made with intent to prevent appellant from obtaining employment with CBS or with any employer.

According to the complaint the true facts concerning appellant's termination were as follows: In January and February of 1967, appellant became a candidate for business manager of Local 45. Appellant received information that the salary paid the incumbent business manager was not in accordance with union rules. Appellant was declared ineligible for election and the incumbent was re-elected, but in September appellant twice wrote letters to the union's international office in San Francisco concerning the alleged violation. The international office sent a letter to Local 45 requesting information about salary ranges, and the business manager stated at a regular membership meeting in October that "somebody" was making trouble. A representative of the international office attempted to contact appellant concerning his charges, but before a meeting could be arranged appellant was laid off. At a subsequent membership meeting the president of the local, in reference to a letter from appellant to the international office, called appellant a "goddamn liar." The business manager said that "somebody" was making trouble and "I'm going to take action to the fullest extent at my disposal."

The complaint further alleges that as a result of the misrepresentations by the union as to appellant's prior service, he was prevented from obtaining employment. Appellant filed charges with the NLRB alleging unfair practices in violation of section 8(a)(3) of the National Labor Relations Act but the NLRB "relinquished jurisdiction" of the complaint.

For a second cause of action the complaint realleged the above facts and additionally alleged: On or about October 4, 1960, defendant CBS entered into a written contract with appellant whereby CBS employed appellant as an electrical worker for an indefinite period at the going rate bargained for by Local 45 according to the contract between CBS and Local 45 "to which plaintiff was and is a third party beneficiary." A contract existed between appellant and Local 45 whereby Local 45 "was to obtain employment for plaintiff in the industry and bargain as a union representative for him to his benefit," and a contract existed between CBS and appellant with CBS to act in the capacity of employer. Local 45

breached its agreement by failing to bargain for or find employment for appellant, in fact, deprecating and derogating appellant, and CBS breached its agreement by failing and refusing to employ appellant. Local 45 made knowingly false representations about plaintiff with intent to wrongfully interfere with appellant's employment and to induce CBS to breach appellant's contract of employment. As a proximate result of such representations and wrongful interference with appellant's employment, CBS breached appellant's contract of employment and discharged him, to appellant's damage.

## CONTENTION

Appellant contends that the trial court erred in holding the action to be within the exclusive jurisdiction of the NLRB. We conclude that although the instant complaint is inartfully pleaded, it is likely appellant could amend the complaint so as to state a cause of action within the superior court's jurisdiction. We therefore reverse the judgment with directions to allow appellant to amend the complaint.

## DISCUSSION

Sections 7 and 8 of the National Labor Relations Act (29 U.S.C.A. §§ 157, 158) define certain protected concerted activities and certain prohibited unfair labor practices. In *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the Supreme Court stated that Congress intended the NLRB to obtain uniform application of its substantive rules with regard to these activities, to avoid conflicts resulting from a variety of local procedures and attitudes toward labor controversies. The court therefore held that if the activity in question is "arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (*Id.* at p. 245 [3 L.Ed.2d at p. 783].)

In the instant case the complaint alleges that Local 45 prevented appellant from obtaining employment with any employer and caused CBS to discharge appellant or to refuse to rehire him, in retaliation for appellant's exercising his rights to participate in union activities, such as running for union office and challenging alleged violations of union rules by union officers. Appellant's activities and respondents' alleged conduct are arguably subject to sections 7 and 8 of the act. (*Plumbers' Union* v. *Borden* (1963) 373 U.S. 690, 694-695 [10 L.Ed.2d 638, 641-642, 83 S.Ct. 1423]; *Iron Workers* v. *Perko* (1963) 373 U.S. 701, 706-707 [10 L.Ed.2d 646, 649-

650, 83 S.Ct. 1429]; *N.L.R.B.* v. *A & B Zinman, Inc.* (2d Cir. 1967) 372 F.2d 444, 445; *Flack* v. *N.L.R.B.* (7th Cir. 1963) 327 F.2d 396, 399.) Appellant does not deny that the activities complained of are also unfair labor practices under the act.[2]

However, the *Garmon* rule does not apply to a suit for breach of the collective bargaining agreement under section 301(a) of the Labor Management Relations Act (29 U.S.C.A. § 185(a)).[3] ■ It is now well established that an employee may bring an action in state or federal court for breach of a collective bargaining agreement notwithstanding that the conduct complained of may also constitute an unfair labor practice. *(Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 503-506 [7 L.Ed.2d 483, 484-486, 82 S.Ct. 519]; *Teamsters Local* v. *Lucas Flour Co.,* 369 U.S. 95, 101-102 & fn. 9 [7 L.Ed.2d 593, 597-598, 82 S.Ct. 571]; *Smith* v. *Evening News Assn.,* 371 U.S. 195, 197 [9 L.Ed.2d 246, 249, 83 S.Ct. 267]; *Humphrey* v. *Moore,* 375 U.S. 335, 344 [11 L.Ed.2d 370, 378-379, 84 S.Ct. 363]; *William E. Arnold Co.* v. *Carpenters,* 417 U.S. 12, 16 [40 L.Ed.2d 620, 625, 94 S.Ct. 2069]; *United Concrete Pipe Corp.* v. *Laborers' Local No. 89,* 231 Cal.App.2d 315, 317-318 [41 Cal.Rptr. 816]; *Thornton* v. *Victor Meat Co.,* 260 Cal.App.2d 452, 464-465 [67 Cal.Rptr. 887]; *Shaw* v. *Metro-Goldwyn-Mayer, Inc.,* 37 Cal.App.3d 587, 597 [113 Cal.Rptr. 617]; *Magallanes* v. *Local 300, Laborers' Internat. Union of North America,* 40 Cal.App.3d 809, 814-815 [115 Cal.Rptr. 428].)

■ A union may be liable in a suit under section 301(a) where the union itself breaches the collective bargaining agreement or induces a

---

[2]Indeed, the complaint alleges that appellant filed charges with the NLRB, but that the NLRB "due to the expense and difficulty in accounting proof relinquished jurisdiction of the right and directed plaintiff to pursue his rights under law by means of private attorneys." The record of the NLRB proceedings is not included in the record on appeal.

The only case brought to our attention by the parties as to the authority of the NLRB to "relinquish jurisdiction" to the states is *Russell* v. *Electrical Workers Local 569,* 64 Cal.2d 22 [48 Cal.Rptr. 702, 409 P.2d 926], relating to the power of the NLRB under section 14(c) of the Labor Management Reporting and Disclosure Act (29 U.S.C.A. § 164(c)) to "decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction." Appellant had the burden to demonstrate that the NLRB invoked or would have invoked section 14(c). *(Russell* v. *Electrical Workers Local 569, supra* at p. 29.) Appellant failed to sustain the burden of showing that section 14(c) was the basis of the NLRB's rejection of his complaint.

[3]"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

breach of the agreement by the employer. (*Vaca* v. *Sipes,* 386 U.S. 171, 187-188 [17 L.Ed.2d 842, 856, 87 S.Ct. 903]; *Richardson* v. *Communications Workers of America* (8th Cir. 1971) 443 F.2d 974, 981, 982; *Magallanes* v. *Local 300, Laborers' Internat. Union of North America, supra,* at pp. 815-817.)

In each of the section 301(a) cases cited, the complaint was bottomed upon the violation of a specific provision of the collective bargaining agreement. The complaint in the instant case is imprecisely drawn in this respect, for it does not specify any particular provision of the collective bargaining agreement claimed to have been violated. The complaint does allege, however, that appellant was employed by CBS at the going rate bargained for between Local 45 and CBS and that plaintiff was and is a third party beneficiary to such contract. The complaint further alleges that pursuant to the contract Local 45 was to obtain employment for appellant and bargain as union representative for him; that CBS was to act in the capacity of employer pursuant to such bargaining and contract; and that Local 45 and CBS each breached the contract. At oral argument counsel for appellant cited specific provisions of the collective bargaining agreement which he contends were breached by the conduct alleged in the complaint.[4]

---

[4]Section 1.06, subdivisions (b), (c), and (d) of the collective bargaining agreement provide as follows:

"(b) It is the further intention of the parties hereto to cooperate in securing competent Technicians for CBS whenever a vacancy occurs or the staff is to be increased. To that end, CBS will give the Union as much advance notice as possible of openings and will consider fairly the qualifications of all applicants referred to CBS for such employment by the Union. If CBS should employ an applicant not a member of the IBEW, it shall, prior to the beginning of such applicant's work, refer the applicant to the Union for information as to the Union membership requirements.

"(c) Each Technician covered hereunder shall as a condition of continued employment, signify his intentions to join and become a member of IBEW by tendering initiation fees and dues within thirty-one (31) days; provided, however, that nothing herein contained shall require the Employer to discharge or otherwise discriminate in any way against any Technician who has been denied membership or has had his membership terminated for any reason other than the failure of such Technician to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership. The failure of any Technician covered hereunder to be or become and thereafter remain a member of IBEW by reason of a refusal to tender the initiation fees or periodic dues so uniformly required shall obligate the Employer to discharge such Technician upon written notice to such effect by IBEW unless such dues or initiation fees are tendered within ten (10) working days after receipt of such notice.

"(d) In hiring Technicians under this Agreement, CBS will give prior consideration to persons who have had experience in the employ of CBS or in the employ of other similar companies. Before filling any vacancy, CBS shall give to the Union reasonable notice of the existence of such vacancy. CBS will notify the Union, prior to each newly-hired Technician's first work day, as to the name, address and employment date of such Technician."

We do not suggest that defective pleadings can be saved by new arguments made for the first time on appeal from judgment entered on demurrer, but under the circumstances we believe the proper course is to remand this case to the trial court with directions to permit appellant to amend his complaint in order to attempt to allege a specific violation of the collective bargaining agreement so as to bring this case within section 301(a). ▌ On appeal from a judgment entered on demurrer, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. ▌ The plaintiff ought to have an opportunity to amend if there is any reasonable possibility that he can state a good cause of action. (*Youngman* v. *Nevada Irrigation Dist.*, 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].)

According to the allegations of the instant complaint appellant has been discharged from his job and is unable to obtain re-employment because of knowingly false representations of the quality of his work, all in retaliation for exercising his right to run for union office and to challenge alleged misconduct of union officers. If these allegations are true, a substantial wrong has been done appellant. Particularly in this case, where the NLRB has already refused relief to appellant, we should be hesitant to dismiss appellant's complaint unless it is clear that he cannot state a cause of action within the jurisdiction of the superior court. A complaint of this nature should be liberally construed. (See *Czosek* v. *O'Mara*, 397 U.S. 25, 27 [25 L.Ed.2d 21, 24, 90 S.Ct. 770]; *Shaw* v. *Metro-Goldwyn-Mayer, Inc.*, *supra*, 37 Cal.App.3d 587, 600-602.)

A similar conclusion was reached in *Abrams* v. *Carrier Corporation* (2d Cir. 1970) 434 F.2d 1234, cert. den., 401 U.S. 1009 [28 L.Ed.2d 545, 91 S.Ct. 1253], where the Court of Appeals remanded with instructions to permit the plaintiff to amend his complaint to more specifically state a cause of action under section 301(a). The court said: ". . . The district court found that the complaint was insufficient because these allegations failed to point out exactly how the contract was violated or which contract provisions were breached. We cannot agree with this conclusion. The appellants attached to the complaint a copy of the bargaining agreement and it is true that no specific provisions of the bargaining agreement were invoked in the complaint. But the appellants did plead a breach of the bargaining agreement which, when viewed with the other allegations of the complaint and the provisions of the agreement, precludes a dismissal of the complaint for lack of specificity. Liberally construed, the complaint essentially alleges, however, inartistically, that Carrier's lockout and subsequent refusal to rehire appellants, while it rehired other employees of

lesser seniority, constituted a discharge without cause, a discrimination against appellants on account of their support of Local 5895, and a loss of their seniority rights, all in violation of the bargaining agreement. [Citations.] We find that the specific provisions of the bargaining agreement may well be construed as prohibiting such conduct. [Citations.] 'To require a plaintiff to set out each and every contractual fact and contention in detail before federal jurisdiction would attach under § 301 would be unreasonable and unwarranted in light of the purpose underlying § 301 and the function of the complaint in federal pleading.' [Citation.] Moreover, a complaint should not be dismissed unless it appears to a certainty that no set of facts could be proven at trial entitling a plaintiff to any relief. [Citations.] Applying this standard, we cannot state that the complaint is so clearly infirm as to mandate a dismissal upon this ground at so early a stage of the proceedings." (Fns. omitted.)

██ We likewise conclude that appellant should be given another opportunity to state a cause of action within the superior court's jurisdiction under section 301(a).[5]

Another reason appellant should be given an opportunity to amend the complaint is that it appears appellant can state a cause of action for defamation which would fall within another exception to the *Garmon* rule found in *Linn* v. *Plant Guard Workers,* 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657]. See also *Letter Carriers* v. *Austin,* 418 U.S. 264 [41 L.Ed.2d 745, 94 S.Ct. 2770]. In *Linn,* union officials made allegedly defamatory statements about the employer's assistant general manager in the course of a union organizing campaign. The company official filed a civil action for libel in the federal district court, based upon diversity of citizenship. The court dismissed the complaint on the ground that the conduct involved was arguably an unfair labor practice and within the exclusive jurisdiction of the NLRB under *Garmon.* The Supreme Court reversed. It pointed out that under *Garmon* the states need not yield jurisdiction to the NLRB where the activity regulated was a merely peripheral concern of the Labor Management Relations Act or where it touched interests so deeply rooted in local feeling and responsibility that it could not be inferred Congress intended to deprive the states of the power to act. (*Id.* at p. 59 [15 L.Ed.2d at p. 588].) The court pointed out that "although the Board tolerates intemperate, abusive and inaccurate statements made

---

[5]If successful in contending that the union violated specific provisions of the collective bargaining agreement intended for his benefit, appellant may also be able to state a cause of action, cognizable in state court, for breach of the union's duty of fair representation. (*Magallanes* v. *Local 300, Laborers' Internat. Union of North America,* 40 Cal.App.3d 809, 815-817 [115 Cal.Rptr. 428].)

by the union during attempts to organize employees, it does not interpret the Act as giving either party license to injure the other intentionally by circulating defamatory or insulting material known to be false." (*Id.* at p. 61 [15 L.Ed.2d at p. 589].) The court concluded: "In the light of these considerations it appears that the exercise of state jurisdiction here would be a 'merely peripheral concern of the Labor Management Relations Act,' provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false. Moreover, we believe that 'an overriding state interest' in protecting its residents from malicious libels should be recognized in these circumstances." (*Id.* at p. 61 [15 L.Ed.2d at p. 589].)

The court further stated: "Nor should the fact that defamation arises during a labor dispute give the Board exclusive jurisdiction to remedy its consequences. The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. While the Board might find that an employer or union violated § 8 by deliberately making false statements, or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coerceive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation—whether he be an employer or union official—has no relevance to the Board's function. [Citation.] The Board can award no damages, impose no penalty, or give any other relief to the defamed individual. [¶] On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his reputation. The Board's lack of concern with the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption." (Fn. omitted, *id.* at pp. 63-64 [15 L.Ed.2d at p. 590].)

In the instant case the complaint alleges that false representations as to the reason for termination of appellant's prior employment were made by the defendants with knowledge of their falsity, with the intent to prevent appellant from obtaining employment and that said misrepresentations in fact prevented appellant from obtaining employment, to his damage. These allegations appear to come within the *Linn* exception to the exclusive jurisdiction of the NLRB.

The instant complaint does not specifically allege defamation but rather "misrepresentation under Labor Code sections 1050, 1054"[6] and "wrong-

---

[6]Labor Code section 1050 provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after having paid off an employee voluntarily leaving such service, by any misrepresentation pre-

ful interference in contract and advantageous business relations." Respondents rely upon *Elsis* v. *Evans,* 185 Cal.App.2d 610, 612, 614 [8 Cal.Rptr. 565], for the proposition that a violation of Labor Code section 1050 which also constitutes an unfair labor practice is within the exclusive jurisdiction of the NLRB. However, *Elsis* v. *Evans* was decided prior to *Linn.* A complaint under Labor Code section 1050 which actually alleges that the statements in question were made with knowledge of their falsity or reckless disregard of the truth falls within the *Linn* exception. For the guidance of the parties on remand we note, however, that the terms of section 1050 refer only to misrepresentations by the former employer.

Appellant's contention that the complaint for wrongful interference in contract and advantageous business relations is cognizable in state court simply because it states a cause of action for an intentional tort under state law is without merit. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern. (*Motor Coach Employees* v. *Lockridge,* 403 U.S. 274, 292 [29 L.Ed.2d 473, 486, 91 S.Ct. 1909].) ■ Standing alone, an unfair labor practice within the exclusive jurisdiction of the NLRB is not rendered cognizable in state court merely by labeling it as an intentional tort. In the instant case, however, the alleged tort is bound up with appellant's causes of action under section 301(a) and under *Linn,* both of which may be heard in state court notwithstanding the fact that the conduct involved may also constitute an unfair labor practice. Under the circumstances there is no conflict with the policies of the National Labor Relations Act to allow appellant to plead a count of wrongful interference in conjunction with the other causes of action properly within the superior court's jurisdiction.

CONCLUSION

The judgment and order of dismissal is reversed. The trial court is directed to permit appellant to file an amended complaint attempting to state a cause of action within the superior court's jurisdiction, and to conduct further proceedings consistent with this opinion.

Stephens, Acting P. J., and Hastings, J., concurred.

---

vents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Labor Code section 1054 authorizes a civil action for treble damages in addition to the criminal penalty.