[Civ. No. 45074. First Dist., Div. Three. Apr. 23, 1980.]

HOTEL & RESTAURANT EMPLOYEES & BARTENDERS UNION, LOCAL 28, AFL-CIO, Plaintiff and Appellant, v. FRANCESCO'S B., INC., et al., Defendants and Respondents.

**COUNSEL**

Davis, Cowell & Bowe, Philip Paul Bowe and W. David Holsberry for Plaintiff and Appellant.

Moore, Sizoo & Cantwell, John E. Cantwell, Guidotti & Mellana and Charles A. Lee for Defendants and Respondents.

**OPINION**

**FEINBERG, J.**—This is an appeal from a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend.

Appellant Hotel and Restaurant Employees and Bartenders Union, Local 28 (hereafter Union) seeks damages from respondents for interference with the Union's affairs.

Respondents include owners and operators of three restaurants (all of whom are collectively referred to herein as the Employers) and five individuals who were unsuccessful candidates in the November 1977 election of Union officers (herein Unsuccessful Candidates).

Appellant's complaint in its first cause of action alleged that the respondents interfered with the Union in violation of the Labor Code when the employers gave money to the Unsuccessful Candidates to promote their candidacies in a union election. In a second cause of action, the complaint alleged that all of the respondents interfered, and conspired to interfere with the relationship between the Union and numerous unnamed "hotel and culinary employers," causing the Union damages in an unspecified amount. The Union asked for $1 million in punitive damages.

The issue presented to us is whether appellant's complaint states a cause of action against respondents. Respondents contend that appellant has not stated a cause of action for the following reasons: (1) It is not alleged that any contract was breached or that any prospective economic advantage was disrupted; (2) Labor Code section 1122 cannot be interpreted to apply to this case; (3) the Union suffered no damages due to respondents' activities; and (4) state law in the area of employer interference with a labor organization is preempted by federal law.

I. *Does the complaint state a cause*
*of action for interference with*
*a contractual relation or with a*
*prospective economic advantage?*

■ The second cause of action of appellant's complaint is couched in terms of the tort of interference with a contractual relation, to wit: the relationship between the Union, respondent and other employers. Respondents pointed out below that the element of such a cause of action, that a contract was breached (*Abrams & Fox, Inc.* v. *Briney* (1974) 39 Cal.App.3d 604, 607 [114 Cal.Rptr. 328]), was not alleged. On appeal, appellant changes its theory to interference with a prospective economic advantage (apparently conceding that no contract was

breached). Respondents argue that an element of that tort, the actual disruption of a prospective economic advantage (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537 P.2d 865]), is absent.

Appellant has not alleged, and it apparently cannot allege, the essential elements of either cause of action—breach of contract or actual disruption of an economic relation. Thus, with regard to the second cause of action, the trial court did not err in sustaining the demurrer.

II. *Does Labor Code section 1122*
 *apply to this case?*

Appellant's first cause of action, for interference with union activities, is based on Labor Code sections 923 and 1122.

Labor Code section 1122 states: "Any person who organizes an employee group which is financed in whole or in part, interfered with or dominated or controlled by the employer or any employer association, as well as such employer or employer association, shall be liable to suit by any person who is injured thereby. Said injured party shall recover the damages sustained by him and the costs of suit."

Respondents contend that this section cannot be interpreted to apply to the facts of this case.

A. *Is appellant's first cause of*
 *action federally preempted?*

Citing *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], respondents argue that state regulation of the conduct in question here is preempted by federal law. The law to which respondents point is 29 United States Code section 158(a)(2), defining it to be an unfair labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it:. . ."

*Garmon* holds that whether certain conduct falls under federal law is a determination to be made, in the first instance, not by the courts but by the National Labor Relations Board (hereafter Board). If the Board determines that federal law applies, then, subject to federal court re-

view, the states are ousted of jurisdiction. (*Id.*, at p. 245 [3 L.Ed.2d at p. 783].) If the Board adopts some disposition which does not clearly define the legal status of the conduct, such as the failure of its general counsel to file a charge, even then the states are not free to step in. (*Id.*, at pp. 245-246 [3 L.Ed.2d at pp. 783-784]; *Guss v. Utah Labor Board* (1957) 353 U.S. 1 [1 L.Ed.2d 601, 77 S.Ct. 598, 609].) Only when the Board determines that the conduct is not subject to federal regulation (or in the instance mentioned below where the states have an interest in preventing breaches of the peace) can the states provide a remedy. (*Id.*, at p. 246 [3 L.Ed.2d at pp. 783-784].)

It is undisputed that the present matter was not brought before the Board.

▉ The fact that Labor Code section 1122 expressly provides for a remedy in damages, whereas no such remedy is available under federal law, is not a basis for state-court assumption of jurisdiction. The lack of a federal counterpart for a state remedy permits state jurisdiction only where the state has an overriding interest in preventing breaches of the peace, i.e., where the complained-of conduct involves violence or threats of violence. (*San Diego Unions v. Garmon, supra*, at pp. 246-248 [3 L.Ed.2d at pp. 783-785].[1]

Appellant cites *Breitegger v. Columbia Broadcasting System, Inc.* (1974) 43 Cal.App.3d 283 [117 Cal.Rptr. 699], for the proposition that

---

[1]Cases decided after *Garmon* have recognized other categories of conduct of "local interest" and thus actionable in the state courts even though arguably within the jurisdiction of the NLRB. In *Farmer v. Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056], for example, a union member was allowed to sue his union for intentional infliction of emotional distress relating to alleged discrimination in hiring-hall practices. (See also *Linn v. Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657] (libel suit), explained in *Breitegger v. Columbia Broadcasting System, Inc.* (1974) 43 Cal.App.3d 283, 291-292 [117 Cal.Rptr. 699].) *Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745], cited by appellant, ruled that an employer might maintain a state-court action to enjoin a trespass occasioned by peaceful picketing because the issue which could have been presented to the Board would have been as to the legality of any picketing, while the issue presented to the state court assumed that the picketing was for a proper purpose but challenged its location. The ultimate test is two-fold, whether the state has a significant interest in protecting its citizens from the challenged conduct, and whether the exercise of state jurisdiction entails a risk of interference with the federal regulatory scheme. In resolving the latter issue, *Sears* holds that "The critical inquiry...is...whether the controversy presented to the state court is identical to...or different from...that which could have been, but was not, presented to the Labor Board." (*Id.*, at p. 197 [56 L.Ed.2d at p. 225].)

"California courts have recognized the validity of bringing a suit based on wrongful interference, even though that interference arises in the broad context of labor relations." *Breitegger*, however, holds that "Appellant's contention that the complaint for wrongful interference *in contract and advantageous business relations* is cognizable in state court simply because it states a cause of action for an intentional tort under state law is without merit." (*Id.*, at p. 293; italics added.) The tort was cognizable in state court but only because it was bound up with the employee's causes of action for defamation (see *Linn v. Plant Guard Workers* (1966) 383 U.S. 53 [15 L.Ed.2d 582, 86 S.Ct. 657]) and for breach of a collective bargaining agreement under section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)), which numerous cases, cited at 43 Cal.App.3d at page 288, have held may be maintained in either state or federal court.

Despite the fact that the conduct of which appellant complains appears to fall under 29 United States Code section 158(a)(2) and federal law may therefore preempt, the demurrer did not raise the preemption issue. We cannot decide that issue for two reasons.

First, the "no man's land" declared by *Guss* and *Garmon, supra*, where conduct is arguably governed by federal law but the federal authorities have declined to exercise jurisdiction yet the state courts are not free to assume jurisdiction, is now "occupied" by a 1959 amendment to the NLRA, which provides that "Nothing in this...[Act] shall be deemed to prevent or bar any agency or the courts of any State ...from assuming and asserting jurisdiction over labor disputes over which the Board declines...to assert jurisdiction." (29 U.S.C. § 164(c)(2).) *Russell v. Electrical Workers Local 569* (1966) 64 Cal.2d 22, 23 [48 Cal.Rptr. 702, 409 P.2d 926], holds that "the jurisdiction exercised by the state courts pursuant to...[the above amendment] does not depend upon a showing that the board has, in fact, declined to act. Rather, we believe that the party seeking relief need only demonstrate, on the basis of published regulations and decisions of the board, that the case is one which the board would decline to hear."

Second, whether the NLRB has exclusive jurisdiction depends on a determination as to whether respondent employers were engaged in interstate commerce. If not, the case must be decided under state law. (See *Messner v. Journeymen Barbers etc. International Union* (1960) 53 Cal.2d 873, 876 [4 Cal.Rptr. 179, 351 P.2d 347].) Whether the em-

ployers were engaged in interstate commerce can be determined by volume-of-business guidelines set by the NLRB for exercise of its jurisdiction.[2] (See *Russell, supra*, at pp. 28-29.) Again, the question is whether the NLRB would exercise its jurisdiction. But respondents did not raise the preemption issue below and the record is silent on the issue.

> B. *Does Labor Code section 1122 apply*
> *only where there are two or more*
> *rival employee organizations?*

■ Respondents point to the fact that section 1122 is part of the "Jurisdictional Strike Act" (Lab. Code, § 1115 et seq.) and contend, citing *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 585 [105 Cal.Rptr. 521, 504 P.2d 457], and *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 472 [2 Cal.Rptr. 470, 349 P.2d 76], that such section has no application to the facts of the instant case because two rival labor organizations are not involved. Instead, the case at bench involves members of the same labor union.

While it is true that *Englund* v. *Chavez, supra*, analyzes the "Jurisdictional Strike Act" in terms which contemplate at least two rival unions, its analysis does not mention section 1122. That section was enacted separately in 1955[3] and it does not relate directly to jurisdictional strikes. Instead, it provides a corollary remedy where one of the unions is, by definition, not a union for jurisdictional strike purposes because it is financed, interfered with, or dominated by an employer.[4] Section 1122 thus reaches beyond the interunion rivalry context to give effect to

---

[2]"[I]t would be a rare restaurant that could justifiably claim to be only in intrastate commerce," the court suggested in *Local Joint Executive Bd. of Hotel & Rest. Employees etc. Union* v. *3539 Century, Inc.* (1975) 47 Cal.App.3d 821, 827 footnote 3 [121 Cal.Rptr. 40].

[3]The other provisions of the act were enacted in 1947.

[4]This definition is provided by Labor Code section 1117, which provides in pertinent part: "As used herein, 'labor organization' means any organization or any agency or employee representation committee or any local unit thereof in which employees participate, and exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, hours of employment or conditions of work, which labor organization is not found to be or to have been financed in whole or in part, interfered with, dominated or controlled by the employer or any employer association within one year of the commencement of any proceeding brought under this chapter. The plaintiff shall have the affirmative of the issue with respect to establishing the existence of a 'labor organization' as defined herein."

the policy of Labor Code section 923,[5] as recognized by *Chavez v. Sargent* (1959) 52 Cal.2d 162, 205 [339 P.2d 801] (disapproved on another point in *Petri Cleaners, supra.*)

The language of *Petri Cleaners* does not compel a contrary conclusion. There the court stated: "The Jurisdictional Strike Act (Lab. Code, §§ 1115-1120, 1122) was designed...to release an innocent employer caught between the rival claims of two or more labor organizations. It does not apply unless there are at least two 'labor organizations' within the meaning of section 1117,..." (53 Cal.2d at pp. 471-472.) Although that statement is true of the act generally, it is not true of section 1122, and the reference to that section was unconsidered.

*Knopf v. Producers Guild of America, Inc.* (1974) 40 Cal.App.3d 233, 247 [114 Cal.Rptr. 782], cited by appellant, is in accord with the view expressed above: "Labor Code section 1122...is a more particular statement of the general policy stated in section 923, proscribing one kind of employer interference. This section, added in 1955...is not limited in its application to a claimed jurisdictional strike situation. Actually, it deals with circumstances in which, by virtue of section 1117, a strike could not be jurisdictional." (Fn. omitted.)

Thus, we are of the opinion that the use of the term "employee group" in section 1122 is intended to be broader than "labor organization" and would apply to a slate of candidates.

C. *Does Labor Code section 1122 require interference with an employee group at an "organizational" stage?*

---

[5]Labor Code section 923 provides: "In the interpretation and application of this chapter, the public policy of this State is declared as follows:

"Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

■ Respondents argue that section 1122 applies only to one who organizes an employee group. They point out that appellant's complaint contains no allegation that an employee group was organized by any employer.

The language of section 1122 ("Any person who organizes an employee group which is financed. . .by the employer. . ., as well as such employer. . .shall be liable. . .") is open to respondents' interpretation that the liability is for the organizing.

*Chavez v. Sargent, supra,* cited by respondents, lends support to this interpretation: "The proscription in this language extends not alone to the act of organizing an employee group *financed* by an employer but also to organizing any group of employees wherein the act of organizing such group. . .is either 'interfered with or dominated or controlled by the employer.'" (52 Cal.2d at p. 205.) Similarly, *Messner v. Journeymen Barbers etc. International Union* (1960) 53 Cal.2d 873, 888 [4 Cal.Rptr. 179, 351 P.2d 347], states that: "[the] plain purpose [of section 1122] is to give an action for damages to any person injured by the formation of a company union."

However, it would defeat that purpose if an employee group and its employer-supporter did not come within the provisions of section 1122 because the group was organized before the employer began to support it. An interpretation of section 1122 which comports with its purpose is that the organizer of an employee group is liable in damages if an employer finances or otherwise interferes with the group. An organizer is one who actively obtains the consent of employees to join the group or actively promotes the continued organization of a group, with knowledge and intent that it is or should be financed or otherwise interfered with, by an employer. The employer's liability can be either for organizing the group or for financing it while someone else is organizing it.

D. *Is contributing to a slate of candidates "interference"?*

■ Respondents assert that contributing money to an individual candidate does not constitute interference within the meaning of section 1122. Their only argument is that such conduct falls short of the interference involved in *Chavez v. Sargent, supra,* to wit: telling employees that they must join a particular union.

We disagree. In the case at bench, the slate of candidates in the union election was an employee group, one or more members of which may have been an organizer in the above sense. If an employer contributed money to the group, there can be little question that the employer not only interfered with but also "financed" the employee group.

### III. *Did the Union suffer damages due to respondents' activities?*

Respondents argue that since the Unsuccessful Candidates lost the election, appellant did not sustain any damages and therefore it cannot state a cause of action. Appellant replies that its "damages" are the loss of the independence necessary to effectively represent its members.

Respondents' argument and appellant's reply are both founded on a failure to distinguish between "injury" and "damages."

When a party is injured by the *intentional* act of another, constituting a breach of a duty owed to the party by the other, then, even though the party may suffer no appreciable detriment (i.e., sustain actual damages), the party is entitled to nominal damages. (Civ. Code, § 3360.) Where a party is entitled to nominal damages, he may also recover punitive damages in a proper case. (See Johns, Cal. Damages (2d ed. 1977) § 1.1(c), pp. 8-9.)

If the allegations of the complaint are true, then the injury is the intentional violation of the worker's "freedom of association, self-organization, and designation of representatives" without the interference of employers, protected by Labor Code sections 923 and 1122. The fact that the Unsuccessful Candidates did not win is irrelevant. Even if they had won, there might not have been any actual damages. The injured party is entitled to at least nominal damages for the injury.

Bound up with their argument that there were no damages is respondents' contention that the Union has no standing to sue. Respondents note that if the Employers had not helped the Unsuccessful Candidates (assuming that they did), their individual opponents might have been able to spend less money to get elected. However, respondents argue, any increased expenditures were presumably not made with the Union's funds and therefore the Union cannot complain. This argument, however, like the last, confuses damages with injury. It as-

sumes that if the Union did not suffer the former, it did not suffer the latter.

We are of the opinion that the right of the workers to freedom of association, self-organization, and designation of representatives is also the right of the Union. Assuming, as we must, the truth of the allegations of the complaint, the Union's right to be free of employer interference was violated just as were the rights of its members. (See *Daniels* v. *Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602, 609 [30 Cal.Rptr. 828, 381 P.2d 652] ("A labor union may sue for libel of the union as an entity.").) Thus, respondents' contention that appellant has no standing to sue is without merit.

We conclude that the complaint states a cause of action.

The judgment is reversed and the case remanded for such further proceedings as may be consistent with the views expressed herein.

Scott, Acting P. J., and Rhodes, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.