[No. AO18542. First Dist., Div. Three. Jan. 4, 1983.]

NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL et al.,
Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
LEANELL JONES, Real Party in Interest.

896

---

**COUNSEL**

Richard D. Givens, Randall F. Wright and Leahy, O'Dea & Givens for Petitioners.

No appearance for Respondent.

James R. Ritchie and Henning, Walsh & Ritchie for Real Party in Interest.

---

**OPINION**

**SCOTT, Acting P. J.**—This petition challenges a trial court ruling requiring the Oakland Raiders (who have since become the Los Angeles Raiders) to turn over medical reports prepared by a team doctor during his examination and treatment of former Raiders football player Leanell Jones, real party in interest in this proceeding. Petitioners contend that the trial court lacked jurisdiction to require production because federal law preempts state law in the area. We have concluded that federal law does not preempt Evidence Code section 1158 rights. Therefore, we deny the petition for a peremptory writ.

In June of 1979, Leanell Jones was signed by the Raiders. During the preseason, he sustained an injury and became disabled from playing football. Donald M. Fink, M.D., was hired by the Raiders to examine and treat Mr. Jones. In August of 1979, the Raiders terminated Mr. Jones' contract to play football. Thereafter, he filed an "injury grievance" against the Raiders pursuant to the collective bargaining agreement between the National Football League Players Association and petitioner National Football League Management Council (Management Council).

In May of 1982, Mr. Jones signed an authorization, pursuant to California Evidence Code section 1158[1] to permit his attorneys to obtain his medical

---

[1]Section 1158 provides: "Whenever, prior to the filing of any action or the appearance of a defendant in an action, an attorney at law presents a written authorization therefor signed by an adult patient, by the guardian or conservator of his person or estate, or, in the case of a minor, by a parent or guardian of such minor, or by the personal representative or an heir of a deceased patient, or a copy thereof, a physician and surgeon, dentist, registered nurse, dispensing optician, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor,

records. Copies of the authorization were served upon the Raiders and Dr. Fink. Both have refused to produce Mr. Jones' medical records.

Mr. Jones petitioned the superior court for an order to show cause why production should not be ordered. The court granted the order to show cause and, after hearing, issued an order compelling production of all medical records in the custody and control of the Raiders and Dr. Fink describing the physical condition of and the treatment provided to Mr. Jones. The date for compliance, originally set for July 6, 1982, was extended to July 22, 1982, to permit the court to consider a petition by the Management Council to intervene in the proceeding. The court denied the petition to intervene. This petition by the Management Council, the Raiders, and Dr. Fink followed.

Petitioners contend that the superior court lacked jurisdiction to rule in an area covered by the collective bargaining agreement entered into by the National Football League players and management. They point out that the agreement provides for a grievance/arbitration procedure to cover injury grievances and that the arbitration procedure does not authorize discovery by the grievant. They contend that because the agreement does not mention discovery, the decision whether to release medical reports is one of the residual "management rights" retained in article I, section 4 of the agreement: "Management Rights: The NFL clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement." To bolster their argument, they note that article II, section 1 of the agreement provides: ". . . This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. . . ."

Real party in interest asserts that his production request in no way requires interpretation of the collective bargaining agreement, but only involves an at-

---

clinical laboratory bioanalyst, clinical laboratory technologist, or pharmacist or pharmacy, duly licensed as such under the laws of the state, or a licensed hospital, shall make all of the patient's records under his or its custody or control available for inspection and copying by such attorney at law or his representative, promptly upon the presentation of the written authorization. [¶] Failure to make such records available, during business hours, within five days after the presentation of the written authorization, may subject the person or entity having custody or control of the records to liability for all reasonable expenses, including attorney's fees, incurred in any proceeding to enforce the provisions of this section. [¶] All reasonable costs incurred by any person or entity enumerated above in making patient records available pursuant to this section may be charged against the person whose written authorization required the availability of such records. 'Reasonable cost' as used in this paragraph means actual copying costs, not to exceed ten cents ($0.10) per page, plus any additional reasonable clerical costs incurred in locating and making the records available. Such additional clerical costs shall be based on a computation of the time spent locating and making the records available multiplied by the employee's hourly wage."

tempt by a patient to obtain access to his medical records as permitted by state law. He contends that case authority which restricts state courts from interfering in certain areas of federal labor law does not prevent a state court from enforcing state law in an area of merely peripheral concern to federal labor law. Real party also challenges petitioners' logic in finding that because the matter of medical records production is *not* included within the collective bargaining agreement, that subject is not one for state court concern.

Simply stated, the main issue in this case is whether the existence of a collective bargaining agreement, which does not specifically authorize discovery, in an industry subject to federal labor law deprives state courts of jurisdiction to enforce the provisions of Evidence Code section 1158 in a dispute between an employee and management. Since the collective bargaining agreement is silent on the subject of production of medical records, the petition raises no issue of conflict between such provision and state law and no issue of waiver of the protections of state law.

Two California opinions rendered on appeals brought by the Hotel and Restaurant Employees and Bartenders Union have traced and considered the doctrine of federal preemption in labor law. *Hotel & Restaurant Employees etc. Union v. Anaheim Operating, Inc.* (1978) 82 Cal.App.3d 737 [147 Cal.Rptr. 510] (referred to as *Anaheim Operating, Inc.*) raised the question of whether a civil suit for defamation could be maintained where the alleged defamatory statements were made during a union organizing campaign. The appellate court concluded that the suit could be maintained. It noted that: "Early cases suggested that states could apply their own common law, but could not apply state rules specifically enacted to regulate labor regulations. (*Motor Coach Employees v. Lockridge,* 403 U.S. 274, 290 [29 L.Ed.2d 473, 484-485, 91 S.Ct. 1909].) Other early decisions allowed the states to interject themselves into labor relations where they could provide a remedy not available under federal law. (*Id.,* at p. 291 [29 L.Ed.2d at p. 485].) Still others allowed state intervention so long as state court decisions were not inconsistent with federal labor law. (*Id.*) All these approaches were eventually rejected by the court. (*Id.*)

"A workable rule finally began to emerge beginning with the 1953 decision in *San Diego Unions v. Garmon,* 359 U.S. 236.

". . . . . . . . . . . . . . . . . . . . .

"The court then formulated the following general rule: 'When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state

jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.' (*Id.*, at p. 244 [3 L.Ed.2d at p. 782].)

"However, the court recognized two exceptions to this general rule: it would 'not [withdraw] from the States [the] power to regulate [1] where the activity regulated was a merely peripheral concern of the Labor Management Relations Act[,]' and (2) 'where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' (*Id.*, at p. 243-244 [3 L.Ed.2d at p. 782].) The court concluded that the peaceful picketing and economic pressure which formed the basis of the suit did not fit within either of the categories excepted. Therefore, under the general rule formulated, it held that the state court could not exercise jurisdiction in the case before it." (*Id.*, at pp. 744, 746-747, fn. omitted.)

Following *Garmon*, the Supreme Court extended the state court's authority in *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [155 L.Ed.2d 582, 86 S.Ct. 657], by permitting a suit for defamation where the National Labor Relations Board had rejected an unfair labor practice complaint filed by the aggrieved employer. As interpreted by the *Anaheim Operating, Inc.*, court: "This 'departure from [the] well-established rule' (*id.*, at p. 72 [15 L.Ed.2d at p. 595]) announced in *Garmon* was justified on several grounds: First, statements uttered with malice are not entitled to the protection of section 7 of the act, which allows employees to form, join, or assist labor organizations and to bargain collectively and engage in concerted activity, and to refrain from any of the above activities. Because section 7 does not protect the utterance of malicious defamation, state regulation of such defamation is 'a "merely peripheral concern of the Labor Management Relations Act[.]" ' (*Linn* v. *Plant Guard Workers, supra,* 383 U.S. 53, 61 [15 L.Ed.2d 582, 589].) As stated above, *Garmon* specifically held that state regulation of matters which peripherally concerned the act constituted an exception to the general rule and was permissible.

"Second, the opinion declared that the state has 'an overriding . . . interest' in protecting its citizens from malicious libel, and this interest 'is "so deeply rooted in local feeling and responsibility" that it fits within the exception specifically carved out by [*Garmon*].' (*Linn* v. *Plant Guard Workers, supra,* 383 U.S. 53, 62 [15 L.Ed.2d 582, 589].)

"Third, it continued, ' "[t]o the extent . . . that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or

liabilities for tortious conduct have been eliminated. . . ." ' (*Id.*, at pp. 61-62 [15 L.Ed.2d at p. 589].)

"Fourth, '[w]hile the Board might find that an employer or union violated § 8 [outlawing unfair labor practices] by deliberately making false statements, *or* that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation . . . has no relevance to the Board's function. [Citation.]' (*Id.*, at p. 63 [15 L.Ed.2d at p. 590]; italics added.)

"Fifth, '[t]he Board can award no damages, impose no penalty, or give any other relief to the defamed individual. [¶] On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his reputation. The Board's lack of concern with the "personal" injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for preemption.' (*Id.*, at pp. 63-64 [15 L.Ed.2d at p. 590].) 'The fact that the Board has no authority to grant effective relief aggravates the State's concern since the refusal to redress an otherwise actionable wrong creates disrespect for the law and encourages the victim to take matters into his own hands. The function of libel suits in preventing violence has long been recognized.' (*Id.*, at p. 64, fn. 6 [15 L.Ed.2d at p. 590].)

"Sixth, ' "damages for personal injuries may be assessed without regard to the merits of the labor controversy . . . ." [¶] Judicial condemnation of the alleged attack [on plaintiff's character] would reflect no judgment upon the objectives of the union. It would not interfere with the Board's jurisdiction over the merits of the labor controversy.' (*Id.*, at p. 64 [15 L.Ed.2d at p. 591].)" (*Anaheim Operating, Inc., supra,* 82 Cal.App.3d at pp. 748-749.)

From the progression of decisions, including two which were decided after *Linn* (*Letter Carriers* v. *Austin* (1974) 418 U.S. 264 [41 L.Ed.2d 745, 94 S.Ct. 2770], and *Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056]), the *Anaheim Operating, Inc.,* court concluded: "[I]t is clear that there is a willingness to subordinate the *Garmon* rule of preemptive NLRB jurisdiction where other more pressing state interests are present. Whether or not the rule is to be bypassed in a particular situation 'must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies.' (*Vaca* v. *Sipes,* 386 U.S. 171, 180 [17 L.Ed.2d 842, 87 S.Ct. 903].) Therefore, in deciding whether or not to subordinate the *Garmon* rule in this in-

stance requires our review of the interests at stake and of the effect of such subordination on national labor policies. ( *Sears, Roebuck & Co.* v. *Carpenters,* 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745].)" (*Anaheim Operating, Inc., supra,* 82 Cal.App.3d at p. 751, fn. omitted.)

While the relaxation of the *Garmon* guidelines was occurring, the early requirement that the state court await a decision by the National Labor Relations Board on whether to act was also changing. As explained by this division in *Hotel & Restaurant Employees etc. Union* v. *Francesco's B., Inc.* (1980) 104 Cal.App.3d 962 [164 Cal.Rptr. 109]: "*Garmon* holds that whether certain conduct falls under federal law is a determination to be made, in the first instance, not by the courts but by the National Labor Relations Board (hereafter Board). If the Board determines that federal law applies, then, subject to federal court review, the states are ousted of jurisdiction. (*Id.,* [359 U.S.] at p. 245 [3 L.Ed.2d at p. 783].) If the Board adopts some disposition which does not clearly define the legal status of the conduct, such as the failure of its general counsel to file a charge, even then the states are not free to step in (*Id.,* at pp. 245-246 [3 L.Ed.2d at pp. 783-784]; *Guss* v. *Utah Labor Board* (1957) 353 U.S. 1 [1 L.Ed.2d 601, 77 S.Ct. 598, 609].) Only when the Board determines that the conduct is not subject to federal regulation (or in the instance mentioned below where the states have an interest in preventing breaches of the peace) can the states provide a remedy. (*Id.,* at p. 246 [3 L.Ed.2d at pp. 783-784].)

". . . . . . . . . . . . . . . . . . . . .

". . . [T]he 'no man's land' declared by *Guss* and *Garmon, supra,* where conduct is arguably governed by federal law but the federal authorities have declined to exercise jurisdiction yet the state courts are not free to assume jurisdiction, is now 'occupied' by a 1959 amendment to the NLRA, which provides that 'Nothing in this . . . [Act] shall be deemed to prevent or bar any agency or the courts of any State . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines . . . to assert jurisdiction.' (29 U.S.C. § 164(c)(2).) *Russell* v. *Electrical Workers Local 569* (1966) 64 Cal.2d 22, 23 [48 Cal.Rptr. 702, 409 P.2d 926], holds that 'the jurisdiction exercised by the state courts pursuant to . . . [the above amendment] does not depend upon a showing that the board has, in fact, declined to act. Rather, we believe that the party seeking relief need only demonstrate, on the basis of published regulations and decisions of the board, that the case is one which the board would decline to hear.'" (*Hotel & Restaurant Employees etc. Union* v. *Francesco's B., Inc., supra,* at pp. 967-969.)

 These authorities make clear that the task of this court is to determine whether, in light of the interests at stake and the effect of the trial court decision

on national labor policies, the National Labor Relations Act preempted the jurisidiction of the court.

*Does the state have a significant interest in protecting its citizens from the challenged conduct?*

Evidence Code section 1158 states a clear public policy of permitting a patient, before filing any action, to inspect and to copy any medical records concerning the patient. The legislative purpose behind the enactment is not stated, but its apparent goal is to permit a patient to evaluate the treatment he or she received before determining whether to bring an action against the medical provider.[2] Section 1158 also enables the patient to seek freely advice concerning the adequacy of medical care and to create a medical history file for the patient's information or subsequent use. It operates to prevent a medical provider from maintaining secret notes which can be obtained by the patient only through litigation and potentially protracted discovery proceedings.

Evidence Code section 1158 is a general statute, applicable to all Californians, whether employed in interstate commerce or not. The vitality of the protection provided by the statute is dependent upon its general effect. If employers in interstate commerce could routinely block discovery of medical records concerning work-related treatment by employer-hired physicians, the protections of section 1158 would be seriously undermined. Gaps would appear in the medical histories compiled by patients. Employees would be forced to begin litigation where perhaps unwarranted, and would encounter obstacles to seeking advice concerning the treatment provided by employer-hired doctors. For these reasons, we conclude that California does have a significant interest in permitting employees to obtain their medical records through the procedures of Evidence Code section 1158.

*Would exercise of state jurisdiction risk interference with the federal regulatory scheme?*

In *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 96 S.Ct. 1745], the Supreme Court explained that in answering this question: "The critical inquiry . . . is . . . whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board." (*Id.*, at p. 197 [56 L.Ed.2d at p. 225].)

---

[2]By its terms, Evidence Code section 1158 grants a right to inspect medical records "prior to the filing of any action or the appearance of a defendant in an action." Thus, the inspection right is not dependent upon litigation. We find no suggestion in the section that the invocation of grievance/arbitration procedures eliminates this right.

The controversy which could be presented to the National Labor Relations Board is whether the silence of the collective bargaining agreement with respect to arbitration-related discovery authorizes the employer to withhold potentially material medical evidence from the employee. The issues would be interpretation of the collective bargaining agreement and application of the "management rights" clause. It is true that resolution of the controversy in favor of the employer would create a conflict between Evidence Code section 1158 and the collective bargaining agreement. But the controversy would not be the same as that presented to the state court, which was not being asked to take any action with respect to the agreement or the grievance/arbitration.

In fact, Leanell Jones' petition to the trial court presented no "controversy" in the sense used by the *Sears* court. The superior court was not asked to resolve disputed issues of fact or to impose sanctions upon petitioners. It was merely asked to enforce the provisions of a general state law permitting a patient to inspect his medical records.

Petitioners assume that, had the matter been presented to it, the National Labor Relations Board would have sustained petitioners' position that they need not furnish Mr. Jones his medical records. However, even were the National Labor Relations Board to take that position, it would not be asserting an important national labor policy; it would merely be interpreting the agreement in peititioners' favor. There is no great federal interest in sustaining petitioners' position concerning the interpretation of this agreement.

Moreover, we have difficulty accepting the premise that the National Labor Relations Board would sustain petitioners' position. Even if we were to assume that the parties could enter into a valid agreement under which Mr. Jones would expressly waive his rights under Evidence Code section 1158, it would not follow that such a waiver could take place because of the agreement's silence and the operation of the "management rights" clause. We have no reason to suspect that the National Labor Relations Board would permit the agreement's silence to override an important right provided by state law.

We conclude that the state's interest in retaining the vitality of Evidence Code section 1158 far outweighs the burdens, if any, upon the administration of federal labor law.[3]

---

[3]Petitioners also criticize the trial court's refusal to permit the Management Council to intervene in the action. We fail to see how its intervention could have affected the action, in view of the facts that the same counsel represented both the Management Council and the Raiders and that the Management Council incorporated the Raiders' arguments on the merits in its brief below. In any case, however, the court did not err in ruling that Management Council was not indispensable to the action and in refusing the request to intervene. Only the Raiders and Dr. Fink were asked to produce medical records for inspection. While the Management Council

The alternative writ is discharged and the petition for a peremptory writ of prohibition and/or mandate and/or certiorari is denied.

Feinberg, J., and Barry-Deal, J., concurred.

may have been "interested" in the legal isues being resolved, it had no direct interest which required protection. At most, it stood in the position of a potential amicus curiae.